Robert BUTLER, Plaintiff,

v.

Peter B. BENSINGER, Individually and in his capacity as Director of the State of Illinois Department of Corrections, et al., Defendants.

No. 73 C 1893.

United States District Court,
N. D. Illinois, E. D.

June 14, 1974.

Robert Butler, pro se; M. Steven Lubet, Garfield–Austin Neighborhood Legal Services, James D. Weill, Chicago, Ill., for plaintiff.

Raymond McKoski, Asst. Atty. Gen. of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion to Dismiss or for Summary Judgment*

Plaintiff Robert Butler brings this civil rights action to seek relief—injunctive, compensatory, and declaratory—arising from conditions and incidents at the Stateville Branch of the Illinois State Penitentiary. Butler was an inmate at Stateville during all times relevant to this complaint, though he is now presently incarcerated at the Pontiac Branch of the Illinois State Penitentiary. Defendants are divers officials of the Illinois Department of Corrections and of Stateville, correctional officers and guards at Stateville, inmate nurses in the Detention Hospital at Stateville, the Stateville prison physician, and John Does 1–12 representing an unknown physician, unknown guards, and unknown inmate nurses at Stateville. For purposes of briefing and discussion, the parties have categorized plaintiff's numerous grievances into seven areas of allegation, and we shall basically adhere to those seven groupings for purposes of resolving the motion before us. Plaintiff alleges that defendants: a) confiscated personal property of plaintiff, b) subjected plaintiff to a pattern of punishment and harassment for stating his views on conditions and treatment at Stateville, c) destroyed legal documents belonging to plaintiff, d) denied plaintiff proper medical care, e) subjected plaintiff to beatings and to cruel and unusual punishment, f) subjected plaintiff to disciplinary action without due process, which action resulted in, *inter alia*, over 21 months spent in the disciplinary segregation unit, and over 200 days spent in the disciplinary isolation unit, g) revoked 23 months of statutory good time without due process. Jurisdiction is based on 28 U.S.C. § 1343, 42 U.S.C. § 1983, 28 U.S.C. § 2254, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U. S.

Constitution, and declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

■ Defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted, or alternatively for summary judgment. Each side has filed affidavits and exhibits, and in addition plaintiff has filed five depositions with the court. It is worthwhile to briefly summarize the court's handling of summary judgment affidavits before discussing the specific allegations before us. For purposes of showing whether or not there is a triable issue, Rule 56(e) of the F.R.Civ.P. requires that both supporting and opposing affidavits be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Assuming affidavits do so comply, one of the primary purposes of summary judgment procedure is to pierce the pleadings, and so summary judgment should be rendered where the supporting affidavits and opposing affidavits (together with other extraneous materials, if any) show that there is no genuine issue of material fact.

■ In determining whether there is any triable issue the court should not pass upon the credibility of opposing affidavits, unless the evidence tendered by them is too incredible to be accepted by reasonable minds. The burden is upon the moving party to establish the lack of a triable issue of fact, and all doubts are resolved against him. Finally, supporting affidavits may be insufficent to satisfy the burden imposed on the moving party even though the opposing party fails to present any competent counter-affidavits or other materials; the opposing party need not show that the issue would be decided in his favor, but need only show that there is a triable issue. *See generally*, 6 J. Moore, Federal Practice ¶ 56.11 [3].

■ Also, before delving into the specifics of the complaint, the court grants the motion to dismiss in its entirety as to: a) Peter Bensinger, at all relevant times Director of the Department of Corrections of the State of Illinois, b) A. M. Monahan, at all relevant times Assistant Director of the Illinois Department of Corrections, c) Frank J. Pate, at all relevant times Warden of the Illinois State Penitentiary in Joliet, d) George Stampar, at all relevant times Superintendent of the Stateville prison in Joliet, and e) E. E. Morris, at all relevant times Assistant Superintendent of Stateville Penitentiary. The only allegations made as to Bensinger, Monahan, Pate, Stampar, and Morris are that they "have the duty to regulate and control the correctional officers and guards in the Illinois State Penitentiary system, and to administer the Illinois State Penitentiary system, in such a manner as to prevent inmates from being deprived of their rights, privileges, and immunities under the Constitution and Laws of the United States." (Amended Complaint, paragraph 4(q)). It is the law of this circuit that such an allegation is insufficient to state a claim against the above-named defendants. The complaint fails to allege any overt acts as to these defendants, or that any illegal acts were administered at the direction of these defendants, or with their knowledge and consent. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969). The plaintiff must prove actual conduct depriving him of his rights on the part of each defendant whom he seeks to hold liable; an official is not liable for the acts of his subordinates in the absence of some personal involvement in those acts on the part of the party sought to be charged. Landman v. Royster, 354 F.Supp. 1302, 1316 (E.D.Va.1973). As stated, plaintiff alleges neither that defendants personally directed certain acts, nor that there was actual knowledge and acquiescence in them, Landman v. Royster, *supra* at 1316, and so a cause of action is not stated as to these defendants. Furthermore, looking beyond the mere language of the complaint, nothing in

the record to date indicates any evidence that would substantiate such charges, which fact merely acts as an independent buttress to our decision to dismiss as to these defendants.

## Allegation A

Plaintiff complains that on September 12, 1968, and again on or about December 24, 1968, he was deprived of items of personal property, including art equipment, art effects, and commissary goods, by defendant Larry Yates in violation of his Fourth and Fourteenth Amendment rights. Defendants claim that this deprivation does not state a claim under 42 U.S.C. § 1983. We agree.

■ Without attempting to define the precise scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. Lanza v. New York, 370 U. S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). In prison, official surveillance has traditionally been the order of the day. *Id.*

■ Furthermore, while the federal courts certainly do not condone conversion of an inmate's property, they necessarily insist that such allegations and charges be heard in the state courts. Alleged improper confiscation of a prisoner's property is a matter which falls within the rubric that "only in exceptional circumstances will a federal court interfere with matters that involve the internal management of a state prison." United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir. 1964); Taylor v. Burke, 278 F.Supp. 868 (E.D.Wis.1968) (alleged seizure of a family photograph album); United States ex rel. Wagner v. Ragen, 213 F.2d 294 (7th Cir. 1954) (alleged seizure of prisoner's oil paintings). *See also* United States ex rel. Morris v. Radio Station WENR, 209 F. 2d 105, 107 (7th Cir. 1953); Siegel v. Ragen, 180 F.2d 785, 788 (7th Cir. 1950); Kelly v. Dowd, 140 F.2d 81, 82 (7th Cir. 1944). We appropriately decline to hear this allegation.

## Allegation B.

Plaintiff complains that as an outspoken critic of prison abuse, he has been subjected to a *pattern* of discrimination on the part of certain officials which has resulted in his being punished in an arbitrary and vindictive manner. As evidence of this charge, plaintiff lists numerous instances of what he terms "severe and disproportionate punishments" for minor offenses, such as "10 days in isolation for being in bed", and "5 days in isolation for wearing an undershirt without sleeves" (Plaintiff's brief, p. 6; defendants' exhibit B), and argues that such punishment is clearly a thinly-veiled excuse to harass and punish him for his views. Defendants move to dismiss this complaint for being vague and conclusionary, and for failure to allege specific instances where plaintiff was punished for exercising his First Amendment rights.

■ Ideally, no punishment resulting in a "grievous loss" can be imposed on any prisoner without a due process hearing as required by United States ex rel. Miller v. Twomey, 479 F. 2d 701 (7th Cir. 1973). Plaintiff's grievance is that he is regularly subjected to unduly harsh punishment without a true and proper hearing, and so he requests the court to "pierce the veil of his disciplinary record" to discovery the "abuses he has suffered." (Plaintiff's brief, p. 7). Insofar as the charges made herein, and the relief requested, is merely a broader statement of the grievances and relief discussed in Allegations E and F, *infra,* we decline to consider and rule upon Allegation B as an independent complaint.

## Allegation C

■ Plaintiff complains that in July, 1969, certain unknown defendants destroyed his trial transcript and certain other legal documents, in violation of his Sixth and Fourteenth Amendment rights. It is settled that a complaint alleging the destruction by prison guards of an inmate's legal papers essential to his ongoing appeal states a

good cause of action for damages under the Civil Rights Act, Sigafus v. Brown, 416 F.2d 105 (7th Cir. 1969), and that the deprivation of materials necessary to afford reasonable access to the courts is a violation of due process. Sigafus v. Brown, *supra* at 107; Adams v. Carlson, 488 F.2d 619 (7th Cir. 1973). Defendants move to dismiss on the basis that regardless of any actual removal or destruction of legal papers, plaintiff was not actually denied access to the court, as evidenced by his 1971 lawsuit involving the incidents herein, and the present lawsuit.

■■■ However, as plaintiff argues, an inmate who claims obstruction in his access to the court but who eventually succeeds in lodging his complaint must not have his claim dismissed merely due to the resultant success of his perseverance; such a policy would effectively foreclose all lawsuits claiming obstruction of access to the courts by virtue of the fact that the plaintiff ultimately established the desired communication. On the other hand, the fact that plaintiff Butler has on some occasions been heard by this court is at least *prima facie* evidence tending to disprove his charge, and an isolated instance of confiscation of legal material occurring, for example, as part of a seizure of contraband materials will not suffice, absent further proof of malintent, to prove attempted obstruction of access to the courts.

We note the Seventh Circuit's recent and continued decisions safeguarding and expanding inmates' rights in this area. In Adams v. Carlson, *supra,* the court held as a violation of due process a bisected attorney-client visitation room when the Government failed to justify on security grounds sufficient reasons to lessen the "personal interplay between inmates and counsel," or to "restrict the ease with which attorney-client meetings could be carried on." Adams v. Carlson, *supra* at 631. The court further stated:

[A]n inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. (Ci-

tations omitted). All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden. 488 F.2d at 630.

We cannot find based upon the record before us that Robert Butler clearly had "unfettered access" to the courts during the relevant time period. Defendants' motion as to Allegation C is denied.

*Allegation D*

Plaintiff complains that he was denied adequate medical treatment by prison physician Dr. Venckus on August 28, 1968, and by an unknown prison physician (John Doe No. 1) on or about February 29, 1969; March 17, 1969; and April 1, 1969. (It would appear from the deposition of Dr. Venckus that John Doe No. 1 is, at least on one of the occasions, medical technician Lucas.)

■■■ A claim of medical mistreatment rises to Fourteenth Amendment proportions when it asserts a refusal to provide essential medical care after the prisoner brings his medical complaint to the attention of authorities. In deciding at the pleading stage whether a claim has been stated, the court must consider whether the factual allegations of the complaint suggest the presence of the following factors: the symptoms of the prisoner evidenced a serious disease or injury; the potential for harm by reason of delay or denial of medical care was substantial; such harm did result. Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974); Stiltner v. Rhay, 371 F.2d 420, 421 n. 3 (9th Cir. 1967), cert. denied 386 U.S. 997, 87 S.Ct. 1318, 18 L.Ed.2d 346, reh. denied 389 U.S. 893, 88 S.Ct. 21, 19 L.Ed.2d 212; Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957).

■■■ Plaintiff complains with regard to the August 28, 1968 incident, as a result of which he visited Dr. Venckus, that he had suffered a dislocated shoulder and abrasions of the face, and that Dr. Venckus stated that he had no complaint and refused to treat him. The factual allegations of the pleadings do

not indicate that any harm resulted from Dr. Venckus's alleged inadequate or denied medical treatment, or even that there was a substantial potential harm by reason of delay or denial of medical care. Furthermore, the cause of action of "denial of medical care" does not pertain to failure to administer medicine or treatment *subsequent* to examination; a claim is not stated where plaintiff alleges no more than that he is dissatisfied as to the adequacy of treatment actually received for a particular injury or ailment. Henderson v. Pate, 409 F.2d 507, 508 (7th Cir. 1969), cert. denied 396 U.S. 914, 90 S.Ct. 233, 24 L. Ed.2d 191. It is clear to this court that Dr. Venckus did examine Robert Butler on August 28, 1968, even if he did subsequently deny him medicine or treatment. (Defendants' exhibit H–1; Venckus deposition).

 The court finds similar objections with regard to the allegations concerning denial of medical treatment by John Doe No. 1. First, the pleadings do not indicate the presence of residual, tangible harm as a result of denied medical treatment. Thomas v. Pate, *supra*. Further, the record appears to indicate that Butler was at least seen by John Doe No. 1, even if subsequently denied treatment because in the physician's opinion the injury did not merit treatment. Differences in medical opinion, or even alleged malpractice claims, will not support a claim against the physician. Commonwealth of Pennsylvania ex rel. Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797. Also, Dr. Venckus testified at his deposition that the medical technician was competent to determine if an inmate needed to see a physician, but that if an inmate insisted he could see the physician regardless of the technician's opinion. Plaintiff does not claim that he insisted on seeing a physician despite the refusal of John Doe No. 1 to treat him. We conclude that plaintiff does not state a cause of action in Allegation D and that if he does, defendants are entitled to summary judgment.

*Allegation E*

Plaintiff complains of violations of his Eighth and Fourteenth Amendments rights, in that he has been subjected to cruel and unusual punishment consisting of beatings by prison guards on no fewer than nine different occasions, each occasion being pleaded with due particularity, and that he has been subjected to cruel and unusual punishment as a result of the conditions in the isolation cells.

 The law states that a plaintiff cannot support a claim under the Civil Rights Act by a mere averment that a tort was committed on his person under color of state law even if such was intentional. Kontos v. Prasse, 444 F.2d 166 (3d Cir. 1971); Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969). Alleged assaults by state prison officials, absent factual indication of a constitutional violation, are matters for consideration of internal prison discipline actionable, if at all, in the state courts. Cole v. Smith, 344 F.2d 721, 724 (8th Cir. 1965). The criteria used in determining which assaults reach the magnitude of a constitutional deprivation is whether the complaint indicates that the prisoner has been administered physical and mental abuse or corporal punishment of such base, inhumane, and barbaric proportions that it shocks and offends the court's sensibilities and offends the Eighth Amendment as well. Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967). We also take careful note of the Seventh Circuit's holding that:

> We recognize the general proposition that punishment which is disproportionate to the offense committed constitutes cruel and unusual punishment, whether imposed without or within prison walls (citations omitted). . . . An inmate who refuses to

shave his beard does not ordinarily deserve solitary confinement; conversely, the mastermind of a large-scale escape attempt or a devastating riot may justly receive more than a few days in isolation from his fellow inmates. Adams v. Carlson, 488 F.2d 619, 635–636 (7th Cir. 1973).

To the extent that the complaint avers facts such as those set forth in Allegation B which indicate a disproportionate punishment for the infractions committed, plaintiff states a claim for cruel and unusual punishment.

▇▇ Without reciting the allegations pertaining to each incident, the court notes that the general corporal punishment grievance states that plaintiff was, on the specific days listed in the complaint, beaten, kicked, and sprayed with mace; beaten until unconscious; handcuffed and beaten; or beaten on the head with blackjacks and kicked. Plaintiff further states that in none of the incidents under consideration did he behave in a manner to provoke these beatings. Assuming the facts in the pleadings are true, an unjustified brutal beating by prison guards is sufficient to state a claim under 42 U.S.C. §§ 1981, 1983. Aulds v. Foster, 484 F.2d 945 (5th Cir. 1973); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

In Aulds v. Foster, supra, the district court considered a prisoner's complaint alleging brutal prison guard beatings, and found on behalf of defendants on a summary judgment ruling. The lower court said that the "main gist of these affidavits is simply that the guards handled the plaintiff rougher than the inmates thought they should . . .", that "the whole incident was a prison disturbance which required action on the part of the penitentiary guards," and that "this entire matter constituted a matter of internal prison administration, and that there is not sufficient evidence to justify a conclusion that any rights of the plaintiff protected by 42 U.S.C. § 1983 were violated in this case."

The Court of Appeals reversed, saying:

A motion for summary judgment should only be granted when there is no genuine issue as to any material fact. The party opposing the motion is to be given the benefit of all reasonable doubt in determining whether a genuine issue exists. Heyward v. Public Housing Administration, 238 F.2d 689, 696 (5th Cir. 1956); Pennsylvania v. Curtiss Nat'l Bank, 427 F.2d 395, 401 (5th Cir. 1970). Although affidavits certainly are useful on a motion for summary judgment, the court may not resolve disputed fact issues by reference to the affidavits. The fact that it may be surmised that the party against whom the motion is made is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him. National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962); American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967).

Although similarities did exist between the affidavits of the inmates and those of the guards, important factual distinctions were present. The distinctions concern the degree of brutality, what was said by the guards, and the inmates' action provoking guard reaction. The truth of this matter should be determined by a trial on the merits.

As a matter of policy federal courts are reluctant to interfere with internal prison discipline, however, "this chariness does not mean that prison officials have unfettered discretion in the treatment of their prisoners." Anderson v. Nosser, 438 F.2d 183, 189 (5th Cir. 1971), affirmed en banc as modified, 456 F.2d 835 (1972).

Similarly in this case there are important factual distinctions concerning the degree of brutality, and the inmate's action provoking guard reaction.

■ We note, though, that force is properly employed by prison personnel in self-defense, in breaking up fights between inmates, in compelling obedience to lawful orders where milder measures fail, and in protecting state property, and so we do not intimate by anything we have said thus far that any misconduct by defendants can be proved at trial. We only decide that the existence of genuine issues of material fact make summary judgment inappropriate.

■ On the other hand, we reject plaintiff's contention that the conditions of his isolation cell constituted cruel and unusual punishment. As defendants note, the physical conditions existing in the Stateville isolation unit have been the subject of recent adjudication in the federal courts of this district, and it has been held that though "the alleged cell conditions undoubtedly would make confinement in such quarters unpleasant, they do not constitute conditions so foul, so inhuman and 'so violative of basic concepts of decency' to fall within the proscriptions of the Eighth Amendment. Wright v. McMann, 2 Cir., 387 F.2d 519." Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). The allegations here do not seem significantly different from the physical conditions described in Adams v. Pate. Though plaintiff complains of being left "virtually naked in a freezing cell" (Plaintiff's brief, p. 17), this court notes that the isolation cells are housed in a modern brick building where the temperature is kept relatively uniform, and that the exterior window "which might easily have been left open in the Northern Illinois winter" (Plaintiff's brief, p. 18) is essential to safeguard against inadequate ventilation in an isolation cell. Plaintiff does not state a cause of action as to the physical conditions of the isolation cells.

*Allegation F*

Plaintiff complains that he has been denied due process hearings before being placed in either the segregation or isolation unit, and that during the period of his incarceration at Stateville Penitentiary he was required to spend over 200 days in the isolation unit (of which about sixty are actually accounted for herein) and over 21 months in the segregation unit without having been given the procedural protection guaranteed by Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973).

In Miller v. Twomey, *supra*, the Seventh Circuit held that in any case involving a "grievous loss" a prisoner is entitled at least to adequate and timely written notice of the charge, a fair opportunity to explain and to request that witnesses be called or interviewed, and an impartial tribunal. Butler's complaint, when measured against these minima, is clearly adequate to allege deficiencies in his disciplinary proceedings, and the court may take notice that the stated prison disciplinary procedures during the years 1967–1969 did not meet the standards set forth in *Miller*.

However, we must also ask whether the various punishments imposed on plaintiff were sufficiently severe to bring the due process requirement into play. We turn for guidance to Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974), a recent opinion also dealing with an inmate at Stateville Penitentiary. The court said, 493 F.2d at 161:

> We recognize that prisoners in the general population live without many of the amenities and freedoms taken for granted outside prison walls. But confinement in isolation often entails deprivation of remaining highly valued rights and privileges enjoyed by inmates in the general population.

> The alleged deprivation of statutory good time and punitive confinement for fifteen days clearly constitute a "grievous loss." *Miller, supra*, 479 F.2d at 715; Knell v. Bensinger, 489 F.2d 1014, p. 1018 (7 Cir. 1973).

> In order to determine whether confinement in isolation for three days or ten . . . is sufficiently severe, the conditions of confinement must be scrutinized . . . . We conclude that a prisoner so confined for three

days or more (and possibly for fewer) suffers a "grievous loss".

Defendants move to dismiss, arguing that it would be inappropriate to apply *Miller* retroactively so as to award damages against the defendants for past failure to comply with *Miller*, if their acts were in good faith, Thomas v. Pate, *supra*, 493 F.2d at 161 n. 6; *Miller, supra*, 479 F.2d at 719 n. 38, and arguing that injunctive relief is not required as plaintiff is not now in isolation or segregation, and newly enacted Administrative Regulation No. 804 incorporates the *Miller* requirements for all future disciplinary hearings.

 While we certainly have no intention of holding liable a person who holds a reasonable belief that the practices which he directed or acquiesced in were constitutionally permissible, at least certain of the practices charged here "were of such a shocking nature that no reasonable man could have believed that they were constitutional." Landman v. Royster, 354 F.Supp. 1302, 1318 (E.D.Va.1973). For example, the record indicates that defendant Pollman, disciplinary captain, the man alleged to have participated in two beatings of plaintiff, also on several occasions made the initial report against plaintiff. Therefore, defendant Pollman not only reported plaintiff for an alleged infraction, but also sat in judgment upon him, and then determined his punishment. (Defendants' exhibit B). Such procedures not only do not comply with the rudimentary disciplinary guidelines then in effect, but also clearly preclude a summary judgment finding of good faith on this issue.

 We agree with defendants that no injunctive relief is required with regard to this allegation. Plaintiff is not in isolation or segregation, and the disciplinary regulations have been changed. (Furthermore, this court is of the impression that all good time credit is computed at the beginning of an inmate's term and credited to him immediately; subsequent to that, an inmate may have good time credits revoked for disciplinary reasons. If this is correct, one seemingly could not "lose the opportunity to earn good time credits while in isolation." In any case, all issues involving statutory good time are discussed in Allegation G, *infra*.)

### Allegation G

Plaintiff complains that he was subjected to the revocation of 23 months of statutory good time credits without the benefit of the due process hearing required by *Miller, supra*. Since plaintiff's good time credits were revoked generally at the same hearings at which he was ordered to spend time in disciplinary isolation, it is clear that the same infirmities discussed in Allegation F are present for purposes of Allegation G. Defendants' motion to dismiss this allegation focuses not on the adequacy of the hearings themselves, but rather on the contention that complaints seeking restoration of good time credits sound exclusively in habeas corpus, and that plaintiff has failed to exhaust his state remedies. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "Requiring exhaustion in situations like that before us means, of course, that a *prisoner's state remedy must be adequate and available,* as indeed § 2254(b) provides. (emphasis added)." 411 U.S. at 493, 93 S.Ct. at 1838.

 Determining whether Illinois does indeed provide an adequate remedy has proved to be an extraordinarily difficult question. Fortunately, we already have some guidance in this area from a circuit court judge who indicates that due to the peculiarities of Illinois law, there is no available state remedy for the plaintiff at bar. United States ex rel. Stamps v. Cannon, 74 C 644 (N.D. Ill.1974) (Tone, J.). Specifically, the Illinois courts apply the prematurity doctrine in habeas corpus cases, which doctrine holds that where a prisoner, even if he receives all the merit time challenged, would still not be eligible for release, habeas corpus jurisdiction will not

lie to restore that merit time. *See, e. g.,* People v. Gersbacher, 4 Ill.App.3d 948, 282 N.E.2d 243 (1972). In Butler's case, he is challenging the revocation of good time credits of approximately two years, whereas his sentence is considerably longer than that. Hence it is clear that state habeas corpus is not an available remedy in this case.

■■■ Defendants also suggest other alternatives as possible state remedies, but none of them seem adequate to provide plaintiff relief. One of defendants suggestions is the Department of Corrections internal grievance procedure. (Administrative Regulation 845, defendants' exhibit G). However, nothing in that Regulation indicates that that procedure establishes in any person or board the power or authority to restore good time credits. The internal grievance procedure was not intended to handle such controversies, as evidenced by the lack of due process safeguards such as assuring impartial committee members. Furthermore, the Regulation itself states that "the board will give priority to hearing problems dealing with food and nutrition, health, personal property, safety, and mail privileges." The internal grievance procedures, while laudatory in purpose, are not adequate remedies for complainants seeking restoration of good time credits.

■■■ ■■■ Similarly a writ of mandamus will not issue for restoration of good time credit. Defendants point us to People ex rel. Beadle v. Illinois Parole and Pardon Board, 40 Ill.2d 290, 239 N.E.2d 782 (1968), but that case merely involves an attempt to mandamus a parole board hearing to which petitioner thought himself entitled because of his mistaken interpretation of the Diminution of Sentence Act. Mandamus might appropriately issue as a command to prison authorities to give an inmate a hearing, but it does not properly issue to scrutinize on the merits the fairness of that hearing.

Furthermore, we heed the pronouncement of the United States Supreme Court on the subject of exhaustion of state remedies in habeas corpus cases, as set forth in Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L. Ed.2d 418 (1974):

Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Petitioners are not required to file "repetitious applications" in the state courts. Brown v. Allen, 344 U.S. 443, 449 n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Nor does the mere possibility of success in additional proceedings bar federal relief. Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Coleman v. Maxwell, 351 F. 2d 285, 286 (CA 6 1965). Whether the State would have heard petitioners' claims in any of the suggested alternative proceedings is a matter of conjecture; certainly no available procedure was indicated by the State Supreme Court in earlier cases. See McMichaels v. Hancock, 428 F.2d 1222, 1223 (CA 1 1970). Furthermore, we are not referred to a single instance, regardless of the remedy invoked, in which the Missouri courts have granted a hearing to state prisoners on the conditions of their confinement. In these circumstances § 2254 did not require petitioners to pursue the suggested alternatives as a prerequisite to taking their claims to federal court. As Mr. Justice Rutledge stated in his concurrence in Marino v. Ragen, 332 U.S. 561, 568, 68 S.Ct. 240, 92 L.Ed. 170 (1947):

"The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of . . . separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in

conclusion he may find only that none of the [alternatives] is appropriate or effective."

 Also, plaintiff argues that the good time credit issue of this lawsuit may be adjudicated under the principles of pendent jurisdiction. We agree.

When the majority in *Preiser* reached the conclusion that a prisoner's challenge to the fact or duration of his confinement must be brought by way of habeas corpus, rather than under § 1983, they were clearly troubled by the mechanics of how to handle the issue of damages. The Court said, 411 U.S. at 493–494, 93 S.Ct. at 1838:

> In the respondents' view, if habeas corpus is the exclusive federal remedy for a state prisoner attacking his confinement, damages might never be obtained, at least where the State makes no provision for them. They argue that even if such a prisoner were to bring a subsequent federal civil rights action for damages, that action could be barred by principles of *res judicata* where the state courts had previously made an adverse determination of his underlying claim, even though a federal habeas court had later granted him relief on habeas corpus.

> The answer to this contention is that the respondents here sought no damages, but only equitable relief— restoration of their good-time credits —and *our holding today is limited to that situation.* If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damage claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as petitioners

themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies. Cf. Ray v. Fritz, 468 F.2d 586 (CA 2 1972). (emphasis added).

We do not mean to intimate that the *Preiser* requirements may be easily subverted or Court's intent circumvented by pleading artifices. However, to retain the damage claims in this suit and dismiss the habeas claims "would lead to litigation arising from a single factual matrix in two jurisdictions." *Cf.*, Pryor v. Regan, 370 F.Supp. 150 (S.D.N.Y. 1974). In view of the substantiality of some of the other allegations discussed in this opinion, "so inefficient a result is not justified." *Id.*

Therefore, we conclude that we have jurisdiction to adjudicate plaintiff's grievances in Allegation G, both because he has fulfilled the exhaustion requirements of 28 U.S.C. § 2254(b), and because the claims come within the principles of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). (held that as a matter of constitutional power pendent jurisdiction exists whenever the state and federal claims derive from a common nucleus of operative fact). Defendants' motion as to Allegation G is denied.

There being no further allegations to consider or arguments of merit to discuss, we conclude that the motion to dismiss is granted in its entirety as to defendants Bensinger, Monahan, Pate, Stampar, and Morris, and that the motion to dismiss or for summary judgment is granted in part and denied in part as to the remaining defendants. Those defendants shall now answer or otherwise plead in accordance with the rules of procedure.