**Eugene WATSON**

v.

**D/S A/S IDAHO.**

**Civ. A. No. 71–1821.**

United States District Court,
E. D. Pennsylvania.

June 1, 1973.

---

Charles Love, of Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Thomas Lane Anderson, of Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

■ Presently before the Court is defendant's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. "It is . . . well settled that a motion for summary judgment does not present a trial of issues but is for the purpose of determining whether there are any genuine issues as to material facts, and that it must clearly appear on such a motion that there is no genuine issue as to any material fact if the motion is to be granted." Janek v. Celebrezze, 336 F.2d 828, 834 (3rd Cir. 1964). Viewing the record before us, in this light, the pleadings, affidavits, and depositions show that there is no genuine issue as to any material fact, and that defendant is entitled to summary judgment as a matter of law.

■ The facts are essentially undisputed. On May 19, 1971, plaintiff, a resident and citizen of Pennsylvania, was injured while performing duties within the course of his employment as a longshoreman. Plaintiff was an employee of the Luckenbach Steamship Company. On said date, plaintiff was assisting in the unloading of bales of wool from a ship, The SS Concordia Sun, owned by defendant. Plaintiff started working at approximately 8:00 A.M. and the accident causing plaintiff's injury occurred at approximately 9:00 A.M. At the time of the accident, plaintiff was working on the wharf at Pier 84, Philadelphia, standing right in the door of the pier shed, about 12 feet from defendant's ship. While bending over and unhooking a draft of cargo, plaintiff was struck in the head by a swinging hook attached to a cherry picker, which is a small mobile crane. Plaintiff had not been issued nor was he wearing a hard hat at the time of the accident. Plaintiff claims that the cherry picker was defective because it was not possible for the cable upon which the hood was attached to wind up properly. Defendant did not own the alleged defective cherry picker, and in fact it was owned, operated, possessed, and maintained by plaintiff's employer, Luckenbach. Moreover, at the time of the accident, Luckenbach was the lessee and in possession of Pier 84, and defendant was not a lessee or in possession of said pier.

Plaintiff alleges, notwithstanding the foregoing undisputed facts, defendant was, in fact, in control of the entire dis-

charge operation and in control of the pier and cherry picker at the time of the accident. The affidavit of the manager of defendant and the affidavit of the vice chairman of Luckenbach are sufficient to establish that control of the unloading operation, pier, and cherry picker was in Luckenbach and *not* the defendant. Plaintiff's position regarding control of the operation, pier, and cherry picker rest upon mere allegations or denials and not upon specific facts supported by affidavits. Accordingly, we find that there is no genuine issue concerning control; thus, there is no genuine issues for trial. Fed.R.Civ.P. 56(e).

Plaintiff relies for jurisdiction of the district court on both admiralty and maritime jurisdiction under 28 U.S.C. § 1333, for his claim of unseaworthiness, and on diversity jurisdiction under 28 U.S.C. § 1332, for a claim said to be based on the law of Pennsylvania.

Victory Carriers, Inc., et al v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), is controlling and dispositive of plaintiff's unseaworthiness claim. In *Victory Carriers*, supra, Law, a longshoreman, was employed by a stevedore company as a forklift driver. Law was injured while loading a vessel owned by Victory. At the time of Law's injury, said ship was tied up to the pier and Law had picked up a cargo load on the dock and was transferring it to a point alongside defendant's ship where it was to be subsequently hoisted aboard by the ship's own gear. As Law returned toward the original pick-up point, the overhead protection rack of the forklift he was driving broke and fell on him. Thus, Law's injury occurred on the dock caused by a defective forklift which was owned and under the control of the stevedore employer and not the shipowner, Victory Carriers. The issue before the Supreme Court in Victory Carriers was ". . . whether maritime law governs accidents suffered

by a longshoreman who is injured on the dock by allegedly defective equipment owned and operated by his stevedore employer.[1]" Specifically, the Court held:

". . . federal maritime law does not govern this accident. Nor, in the absence of congressional guidance, are we now inclined to depart from prior law and extend the reach of the federal law to pier-side accidents caused by a stevedore's pier-based equipment." [2]

The rationale for this holding is clearly and unequivocally stated:

"The historic view of this Court has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States." [3]

The facts in this case are not distinguishable from the facts in Victory Carriers. In both cases, plaintiff, a longshoreman, was injured on a pier by defective equipment owned and operated by his stevedore employer. The Court in Victory Carriers decided that federal maritime law does not govern such an accident.

The aforementioned holding of Victory Carriers has been consistently applied and followed in this Court. See, Cooper v. Australian Coastal Shipping Commission et al., 338 F.Supp. 1056 (E.D.Pa. 1972); Howard v. Kawasaki Kisen K.K., 341 F.Supp. 801 (E.D.Pa.1972); McGrath v. N. V. Reederij "Nautiek" et al., No. 70–3361 (E.D.Pa.1971).

Plaintiff notwithstanding this substantial body of legal authority, urges that Victory Carriers should not be applied to the facts of this case because the locality test as announced in Victory Carriers was expressly or impliedly rejected by the Supreme Court in Executive Jet Aviation, Inc., et al. v. City of Cleveland et al., 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed. 2d 454 (1972). Plaintiff's reliance on this case is misplaced.

---

1. Victory Carriers, Inc., et al. v. Law, supra, at 204, 92 S.Ct. at 420.

2. Id. at 204, 92 S.Ct. at 421.

3. Id. at 205, 92 S.Ct. at 421.

In *Executive Jet*, supra, a jet aircraft which was owned and operated by plaintiff (Executive Jet) ". . . struck a flock of seagulls as it was taking off from [an airport] in Cleveland, Ohio, adjacent to Lake Erie. As a result, the plane lost its power, crashed, and ultimately sank in the navigable waters of Lake Erie, a short distance from the airport.[4]" The issue before the Supreme Court was whether under the above facts and circumstances, plaintiff's alleged cause of action in negligence was within federal admiralty jurisdiction merely because the plane crashed in the navigable waters of Lake Erie. The Court held, inter alia:

". . . we have concluded that maritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases."[5]

The Supreme Court did not expand admiralty jurisdiction as urged by plaintiff, but Executive Jet further restricted it in regard to aviation tort cases. The Court referred with approval to the locality test, when dealing with ships in traditional maritime situations. Thus, in Executive Jet, the Court declared:

"The Court has often reiterated this rule of locality as recently as last Term, in Victory Carriers, Inc. v. Law, 404 U.S. 202, 205 [92 S.Ct. 418, 421, 30 L.Ed.2d 383] we repeated that '[t]he historic view of this Court, has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States'."[6]

In Executive Jet Aviation, the Court also refers to Victory Carriers in explaining the reasons for not expanding admiralty jurisdiction to pier-side accidents:

"Just last Term, in Victory Carriers, Inc. v. Law, 404 U.S. at 212 [92 S.Ct.

at 425] we observed that in determining whether to expand admiralty jurisdiction, 'we should proceed with caution . . .' Quoting from Healy v. Ratta, 292 U.S. 263, 270 [54 S.Ct. 700, 703, 78 L.Ed. 1248] (1934), we stated:

'The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. . . . Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined'."[7]

It is clear that the Supreme Court in Executive Jet Aviation did not expressly or impliedly change the rule in regard to pier-side injuries announced in Victory Carriers. Clearly, the decision in Executive Jet Aviation does not support the position of plaintiff.

Plaintiff, also argues in support of his unseaworthiness claim that the cases of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) are controlling in his favor. We do not agree; both cases were clearly distinguished by the Supreme Court in reaching its decision in Victory Carriers v. Law, supra, 92 S.Ct. at 424:

"It is argued, however, that if a longshoreman may recover for unseaworthiness if injured on a ship in the course of the unloading process, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and if he has an unseaworthiness claim for injuries sustained on the pier and

---

4. Executive Jet Aviation, Inc. v. City of Cleveland, et al., supra, at 250, 93 S.Ct. at 495.

5. Id. at 261, 93 S.Ct. at 501.

6. Id. at 254, 93 S.Ct. at 497.

7. Id. 409 U.S. at 272–273, 93 S.Ct. at 506.

caused by the ship's unloading gear, Gutierrez, supra, he is also entitled to sue in admiralty when he is injured on the dock by his own employer's equipment at the time he is engaged in the service of a ship located on navigable waters. Sieracki, supra, however, did not call into question the extent of federal admiralty and maritime jurisdiction since the accident there occurred on navigable waters. And in Gutierrez, supra, federal admiralty jurisdiction was clearly present since the Admiralty Extension Act on its face reached the injury there involved. The decision in Gutierrez turned not on the 'function' the stevedore was performing at the time of his injury but rather upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers, which the Court held to be an 'injury, to person * * * caused by a vessel on navigable water' which was consummated ashore under 46 U.S.C. § 740. *The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of 'loading' or 'unloading'.* Nacirema Operating Co. v. Johnson, 396 U.S. 212, 223, 90 S.Ct. 347, 354, 24 L.Ed.2d 371 (1969), a case decided several years after Gutierrez, makes this quite clear." (Emphasis supplied.)

Thus, it is clear that the decision of the Supreme Court in *Victory Carriers* requires the application of the locality test and the grant of summary judgment in favor of defendant as to plaintiff's unseaworthiness claim.

■ Finally, plaintiff urges the court not to grant summary judgment as to his claim under Pennsylvania law. Plaintiff in his original memorandum did not cite any authority for his alleged claim under the law of Pennsylvania, and the Court at argument extended an additional opportunity to plaintiff to supplement his memorandum with the appropriate Pennsylvania law relied upon. This sup-

plemental memorandum submitted by plaintiff is also devoid of legal authority. We find no support for plaintiff's apparent theory that Pennsylvania law imposes a duty on defendant shipowner, to inspect, detect and warn or protect plaintiff from defective equipment supplied plaintiff by his stevedore employer, where said equipment is used on the pier and neither the pier nor the equipment is owned, possessed, controlled or operated by the shipowner. Indeed, the authority is all to the contrary. The courts of this district have consistently and uniformly determined that Pennsylvania law does not supply plaintiff with a cause of action under such facts. See, Cooper v. Australian Coastal Shipping Commission et al., supra; Howard v. Kawasaki Kisen K.K., supra; McGrath v. N. V. Reederij "Nautiek" et al, supra.

Accordingly, we grant defendant's motion for summary judgment as to both of plaintiff's causes of action, unseaworthiness under admiralty jurisdiction and the tort claim under Pennsylvania law, pursuant to diversity jurisdiction.