**Mary L. KINCHLOE, Trustee ad litem for Mary L. Kinchloe, and Robert J. Kinchloe, surviving spouse and child of Robert C. Kinchloe, Deceased, Plaintiff,**

**v.**

**AERO COMMANDER, INC., a Delaware Corporation, and Rockwell International, Inc., (formerly North American Rockwell, Inc.), a Delaware Corporation, Defendants.**

Civ. A. No. 73–689.

United States District Court,
W. D. Pennsylvania.

July 12, 1974.

Ronald J. McKay, Pittsburgh, Pa., for plaintiff.

Janice I. Gambino, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

SNYDER, District Judge.

Before the Court for determination is a Motion for Summary Judgment under Federal Rule of Civil Procedure No. 56 filed by the Defendants, Rockwell International, Inc. (Rockwell) and Aero Com-

mander, Inc. (Aero). After oral argument, briefs and a review of the applicable law, it is concluded that the Motion must be granted.

### DEFENDANT ROCKWELL

This diversity action for wrongful death arises from the crash of an Aero Commander 690 during a training flight in the vicinity of Wellsburg, West Virginia on August 14, 1972. Plaintiff's Decedent was the co-pilot of the aircraft. The Plaintiff, Mary L. Kinchloe, the surviving spouse of the Decedent, Robert C. Kinchloe, is a resident of Allegheny County, Pennsylvania. The action was brought by the surviving spouse for herself and for her minor child, Robert J. Kinchloe, who is also a resident of Allegheny County, Pennsylvania. The Decedent was also a Pennsylvania resident.

Rockwell is a Delaware corporation and hired Robert C. Kinchloe at its business headquarters in Pittsburgh, Pennsylvania. The employee was acting within his scope of employment on this training flight which originated and was to terminate at the Greater Pittsburgh Airport.

Rockwell sets up in full defense the Pennsylvania Workmen's Compensation Act which admittedly applied to Pennsylvania employment and which statute contains the following (77 Purdon's Statutes, Sec. 481):

> "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents."

The surviving spouse, Mary L. Kinchloe, requested and received benefits under the Pennsylvania Workmen's Compensation Act.

As is stated in 6 Moore's Federal Practice, ¶ 56.17 [75] at page 2708:

> ". . . Hence in an action by an employee against his employer to recover for negligent injury or for violation of a statutory duty, a motion by the employer for summary judgment on the ground that the workmen's compensation law is applicable and recovery must be in accordance therewith, the motion may be properly granted if there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law, . . . ."

In Wooddell v. Washington Steel Corporation, 269 F.Supp. 958 (W.D.Pa. 1967), a death action was brought against decedent's employer. Motion for Summary Judgment under Federal Rule of Civil Procedure No. 56 was granted, since the plaintiff's decedent had accepted the provision of the Workmen's Compensation Act and acceptance under 77 Purdon's Statutes § 481 "shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of employment, . . . ."

In Watson v. D/S A/S Idaho, 359 F. Supp. 496 (E.D.Pa.1973) a longshoreman brought an action against the owner of the vessel for injuries he received while working on a pier, unloading bales of hay from the vessel. The defendant made a Motion for Summary Judgment, which was granted. The Court stated on page 497 that there were no disputed facts, saying: "The facts are essentially undisputed. On May 19, 1971, plaintiff, a resident and citizen of Pennsylvania, was injured while performing duties within the course of his employment as a longshoreman." The particular piece of equipment which caused the harm to the plaintiff was not owned by the defendant, but by the employer of the plaintiff. The defendant had no ownership or control of the item of equipment.

The defendant established its lack of ownership and/or control with affidavits, and Summary Judgment was granted. The rationale was stated at page 498, as follows:

"Plaintiff's position regarding control of the operation, pier, and cherry picker rest upon mere allegations or denials and not upon specific facts supported by affidavits. Accordingly, we find that there is no genuine issue concerning control; thus, there is no genuine issues for trial. Fed.R.Civ.P. 56(e)."

See also: Hartwell v. Allied Chemical Corporation, 457 F.2d 1335 (3d Cir. 1972) and cases cited therein.

In 6 Moore's Federal Practice, ¶ 56.-15 [4], it is stated that where a party's Motion for Summary Judgment is supported by affidavits, and where the opposing party's papers do not raise any triable issue, then Summary Judgment may be properly rendered.

We must then determine whether the Pennsylvania Act applies, and we hold that it does.

Under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Pennsylvania District Court will apply the substantive law of the forum state. A state's substantive law includes its conflict of laws rules, Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). VanDusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) applies these principles even where a change of venue is granted for the convenience of the parties. (Pennsylvania law was held to apply to a plane crash in Massachusetts after a transfer was ordered to Massachusetts.)

In choice of law cases, Pennsylvania law has applied a flexible rule. In Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), a survival action was brought against a Delaware corporation, which had its principal place of business in Chicago and regularly did business and maintained operational facilities in Pennsylvania. The decedent, a Pennsylvania domiciliary, had purchased an airplane ticket from the defendant in Philadelphia, Pennsylvania, for a flight from Philadelphia to Phoenix, Arizona. The airplane crashed in Denver, Colorado. The Court there stated as follows (203 A.2d pp. 805, 806) in an Opinion by Mr. Justice Roberts:

"Thus, after careful review and consideration of the leading authorities and cases, we are of the opinion that the strict lex loci delicti rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court. As said in Babcock v. Jackson, supra, 12 N.Y.2d [473] at 481, 240 N.Y.S.2d [743] at 749, 191 N.E.2d [279] at 283, 'The merit of such a rule is that "it gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context" and thereby allows the forum to apply "the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation'." (Auten v. Auten, 308 N.Y. 155, 161, 124 N.E.2d 99, 102, supra.)'

It must be emphasized that this approach to choice of law will not be chaotic and anti-rational. 'The alternative to a hard and fast system of doctrinal formulae is not anarchy. The difference is not between a system and no system, but between two systems; between a system which purports to have, but lacks, complete logical symmetry and one which affords latitude for the interplay and clash of conflicting policy factors.' Harper, 'Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen's Essays,' 56 Yale L.J. 1155, 1157–1158 (1947). Moreover, in evaluating qualitatively the policies underlying the significant relationships to the controversy, our standard will be no less clear than the concepts of 'reasonableness' or 'due process' which courts have evolved

over many years. See Cheatham in 'Comments on Babcock v. Jackson,' 63 Colum.L.Rev. 1212, 1229, 1230–1231 (1963).

We are at the beginning of the development of a workable, fair and flexible approach to choice of law which will become more certain as it is tested and further refined when applied to specific cases before our courts."

The Court then held that the Colorado limitation of damages would not apply, stating as follows (203 A.2d pp. 806–807):

"The state in which injury occurred, as such, has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule. Moreover, where the tort is unintentional, the reliance argument is almost totally untenable. Weintraub, 'A Method for Solving Conflict Problems —Torts,' 48 Cornell L.Q. 215, 220, 227 (1963). This is abundantly clear in the present case; the site of the accident was purely fortuitous.

Ordinarily, the place of the injury may have an interest in the compensation of those who render medical aid and other assistance to the injured party. However, where death is immediate, as on the present facts, that state has no such interest. The absence of Colorado's interest on the specific point is amply illustrated by the statute which limits recovery to damages incurred prior to death.

An examination of the policies which apparently underlie that Colorado statute tends to indicate that state's lack of interest in the amount of recovery in a Pennsylvania court. The limitation would seem to have been intended to prevent Colorado courts from engaging in what they might consider speculative computation of expected earnings and the extremely difficult mathematical reduction to present worth. The statute may be based on procedural considerations of purely local concern. Colorado would be unconcerned if a Pennsylvania forum is willing to engage in such computations. Or, the limitation might have been intended to protect Colorado defendants from large verdicts against them. Although United obviously does some business in Colorado, it is not domiciled there. Furthermore, it does business in and flies over other states, including Pennsylvania, which do not limit recovery. Certainly, United could reasonably anticipate that it might be subject to the laws of such states and could financially protect itself against such eventuality. The element of surprise is lacking.

Pennsylvania's interest in the amount of recovery, on the other hand, is great. The relationship between decedent and United was entered into in Pennsylvania. Our Commonwealth, the domicile of decedent and his family, is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected earnings. This policy is so strong that it has been embodied in the Constitution of Pennsylvania, Article III, Section 21 P.S.:

'The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their employment * * * ; *but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive * * *.*' (Emphasis supplied)

From the foregoing analysis, we conclude that on the complaint before us (the facts of which must be accepted as true on preliminary objections), a valid cause of action in assumpsit

has been stated and that the law of Pennsylvania is properly applicable to the issue of damages. Therefore, we must reverse the court below and remand for further proceedings not inconsistent with this opinion."

■ Numerous Federal Courts in Pennsylvania have applied the test set forth in *Griffith* to various diversity cases where the choice of law problem arose. See *e. g.* Wojciechowski v. Long-Airdox Div. of Marmon Group, Inc., 488 F.2d 1111 (3d Cir. 1973) and Dennis v. Ford Motor Company, 471 F.2d 733 (3d Cir. 1973), products liability cases, Neville Chemical Company v. Union Carbide Corporation, 422 F.2d 1205 (3d Cir. 1970), a contract case, Kaznoski v. Consolidation Coal Company, 368 F.Supp. 1022 (W.D.Pa.1974), a wrongful death case, and Siata International U. S. A., Inc. v. Insurance Co. of No. Am., 362 F. Supp. 1355 (E.D.Pa.1973), a surety contract case. In applying the test in *Griffith* to the present case we find that the Plaintiff and the surviving child of the decedent are citizens of Allegheny County, Pennsylvania; that the decedent prior to the crash was a citizen of Allegheny County, Pennsylvania; that the decedent at the time of his death was performing duties in the course of his employment for Defendant Rockwell; and that Defendant Rockwell is a Delaware corporation who has headquarters in Pittsburgh, Pennsylvania. Thus, Pennsylvania is the state that has the primary interest in the administration of the decedent's estate and all relevant parties have a substantial relationship to the state of Pennsylvania. The law of Pennsylvania must be applied to this case and judgment be entered in favor of Rockwell.

## DEFENDANT AERO COMMANDER

Rockwell has filed the Affidavit of Arnold W. Canfield, the Assistant Secretary of Rockwell International, Inc., in which it is set forth that Aero Commander is a division of Rockwell, and that Rockwell manufactured Turbo Commander 690, N1NR, Serial No. 11024, the twin engine aircraft involved in this accident.

The Plaintiff brought this action against "Aero Commander, Inc., a Delaware corporation; and Rockwell International, Inc., (formerly North American Rockwell, Inc.), a Delaware corporation", alleging the following in regard to Defendant Aero Commander:

"The defendant, Aero Commander, Inc., is a Delaware Corporation doing business in the State of Oklahoma, the Commonwealth of Pennsylvania, and various other locations within the United States of America and having its Pittsburgh office at Fifth and Wood Streets in the City of Pittsburgh, Allegheny County, Pennsylvania.

At all times relevant to the happening of the occurrences hereinafter related, the defendant, Aero Commander, Inc., was engaged in the business of manufacturing various types of aircraft for commercial, corporate and private use.

On or about July 15, 1972, the defendant, Aero Commander, Inc., delivered to the defendant, Rockwell International, Inc., then North American Rockwell, Inc., a certain Aero Commander 690, bearing Registration Mark N1NR and Serial No. 11024, which will hereinafter be simply referred to as the 'Aircraft.' "

The Plaintiff served a copy of the Complaint upon the Aero Commander Division of Rockwell International, Inc., in Bethany, Oklahoma. This Division does not have a separate corporate status.

Although somewhat complicated, the following history is necessary to a resolution of our question.

(1) A Delaware corporation named Skyways Aviation, Inc. was incorporated in 1948; this name was changed in 1950 to Aero Design & Engineering Company. Aero Design was acquired by Rockwell-Standard Corporation and operated as a subsidiary from 1958 to September 19, 1960; at that time, Aero Design & Engineering became Aero Commander,

Inc. On August 12, 1963, Aero Commander, Inc. was liquidated and was operated as the Aero Commander Division of Rockwell-Standard Corporation with its location in Bethany, Oklahoma. This Division manufactured only twin engine executive aircraft. Rockwell-Standard Corporation merged with North American Aviation, Inc. on September 22, 1967; the surviving corporation was called the North American Rockwell Corporation. The name of the North American Rockwell Corporation was changed to Rockwell International, Inc. in 1973. The Aero Commander Division of the North American Rockwell Corporation became the Aero Commander Division of Rockwell International, Inc., with its location at 5001 North Rockwell Avenue, Bethany, Oklahoma.

(2) An Oklahoma corporation, Aero Commander, Inc., was formed in 1960; this corporation was formed with the specific purpose of protecting the name "Aero Commander", and is solely a name holding corporation which does not manufacture aircraft of any type.

(3) In 1964, a Delaware corporation entitled Aero Commander, Inc. was formed to handle the manufacture and sales of single engine aircraft; this corporation merged with North American Rockwell Corporation on September 30, 1969; thereafter in 1973, North American Rockwell became the present corporation, Rockwell International, Inc.

Thus in 1963, the original Aero Commander, Inc., the Delaware corporation, lost its separate corporate existence and the second Aero Commander, Inc., lost its corporate existence in the merger of 1969.

From the affidavits and the pleadings filed in this case, the Plaintiff's Decedent was employed by Rockwell to test fly Rockwell planes, which were manufactured by the Aero Commander Division of Rockwell. The Plaintiff is precluded by the Workmen's Compensation laws from maintaining a suit against Rockwell. Summary Judgment will, therefore, be entered in favor of the Defendant Aero Commander.

An appropriate order will be entered.