**Otis GIVENS**

v.

**PRUDENTIAL–GRACE LINES, INC.**

Civ. A. No. 74–1819.

United States District Court,
E. D. Pennsylvania.

Feb. 9, 1976.

Thomas J. Ingersoll, Deasey, Scanlan & Bender, Ltd., Philadelphia, Pa., for plaintiff.

Joseph P. Green, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

In this maritime personal injury action a longshoreman seeks to recover damages from a shipowner for injuries allegedly caused by the "carelessness and negligence of the defendant, by its agents, servants, workmen and employees . . . and the failure of defendant to satisfy its nondelegable duty and obligation to provide plaintiff with a reasonably safe place to work." The Complaint asserts jurisdiction based on diversity of citizenship and demands a trial by jury. Plaintiff was injured on or about September 11, 1973, and his maritime tort claim is therefore governed by the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (Pub.L. 92–576).[1]

Prudential-Grace Lines, as third-party plaintiff, filed a Complaint against the plaintiff's employer, Independent Pier Co., for contribution, indemnity, set-off, or credit, alleging that Independent's own negligence and breach of warranty of workmanlike performance of stevedore services had caused plaintiff's injuries. On January 12, 1976, I granted Independent's motion for summary judgment on the third-party Complaint, on the authority of 33 U.S.C. § 905(b) and *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974).[2]

Plaintiff has also filed suit against the owner of the pier on which the accident occurred, Independent Terminals Co. (Civil Action No. 74–1820). That case has been consolidated with the present one, and a cross-claim is pending by Prudential-Grace against Independent Terminals. Meanwhile, Prudential-Grace has moved for summary judgment against the plaintiff in the main action. That motion is the subject of this Memorandum and Order.

No affidavits have been submitted by either side, and although the parties have served interrogatories upon each other the record shows no sign that answers were filed.[2a] This motion must therefore be decided upon the pleadings, the motion papers, and the deposition of the plaintiff, Otis Givens. I have concluded that there is no genuine issue of material fact as to the liability of Prudential-Grace and that the defendant shipowner is entitled to summary judgment as a matter of law.

The accident which prompted this lawsuit occurred not aboard the vessel but on the pier, as plaintiff and fellow longshoremen

---

1. Section 905(b) of the Act, as amended, provides that, "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title . . ." There is no dispute about the fact that the plaintiff is "a person covered under this chapter." And the defendant ship owner is a proper party; the statute defines "vessel" to mean, among other things, "said vessel's owner." 33 U.S.C. § 902(21).

2. The statute provides that in a third party negligence action against a vessel, "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b). In *Lucas* a three-judge panel in this District interpreted this to require employer insulation "from any liability, including costs and counsel fees, to the vessel," even where the injury was caused by concurrent negligence of the employer and the vessel. 379 F.Supp. at 768–769.

2a. The only answers to interrogatories of which I am aware are those served by Independent Terminals Co. in the companion case, 74–1820.

were engaged in loading cargo onto defendant's ship, the S. S. Santa Clara. Plaintiff was a chisel or forklift truck operator. His job was to carry paper bags of cargo from the south side of the pier to the north side and set them down in an interior doorway which faced hatch # 1 of the Santa Clara. A second forklift operator picked up the bags and set them on pallets. Other wharf men hooked spreader bars onto the pallets, which were then lifted into the hatch.

Plaintiff's activities were interrupted on the morning of the accident when he was told by a fellow longshoreman that "the boss said catch a draft of plywood which was coming out number 2 hatch." (Plaintiff's deposition, p. 13) Plaintiff's "boss" was Albert Williams, in whose gang plaintiff was a registered wharf man. The plywood being lowered from hatch # 2 was to be reloaded into hatch # 1. It consisted of a bundle of 12 to 14 sheets, stacked, secured to the lifting gear of the ship by a rope sling, which in turn was suspended from the ship's cargo hook.

The plywood draft was lowered onto the forks of plaintiff's truck at hatch # 2 and the rope sling was unhooked from the cargo hook at that hatch. Plaintiff then drove his forklift towards hatch # 1, coming to a stop inside the pier doorway facing the hatch, underneath the head of the inshore boom. Other longshoremen came forward and hooked the rope sling of the plywood draft onto the hatch # 1 cargo hook for lifting. At this point the lifting gear at hatch # 1 included a set of spreader bars, which the wharf men previously had been using to load the paper bags of cargo. Instead of detaching the spreader bars from the lifting gear, the longshoremen simply placed the spreader bars loosely on top of the plywood and gave the signal to lift. The draft rose quickly, and the spreader bars fell off the plywood, and, still hanging from the lifting gear, swung back and caught in the forks of plaintiff's vehicle, dragging it forward toward the edge of the pier. Plaintiff, believing that he and his forklift were about to be pitched into the

river, struggled to jump out of the truck. In the process he twisted his right leg and fell off the forklift, onto the pier, on his left side. The lift was halted; the forklift came to a stop with its forks and front wheels extending beyond the pier. All this happened in a matter of seconds. Shortly thereafter, other longshoremen or a supervisor employed by the stevedore company disentangled the spreader bars, and the forklift was hoisted up and back to the inside doorway of the pier.

There is no dispute concerning the facts surrounding this accident. On what basis could the shipowner be liable for negligence? The Complaint contains no specific allegations of negligence, and plaintiff's deposition does nothing to clarify the role, if any, which the ship or its crew played in the event. The only persons named by the plaintiff as having supervised or worked with him on the pier or on board the vessel as deck men, hatch tenders, or winch operators were fellow longshoremen (Plaintiff's deposition, pp. 13–14, 16–17, 29–31, 39–40):

> "Q Did any of the ship's crew members or any employees of Prudential Grace Line, as far as you know, tell you or the other longshoremen what to do or how to do it in the course of your work that day?
>
> "A I can't say. I don't remember now.
>
> "Q Did any of the ship's personnel or other employees of Prudential Grace Lines see your accident happen as far as you know?
>
> "A I don't know.
>
> "Q Was your accident reported to anyone on the ship as far as you know?
>
> "A I don't know." (Plaintiff's deposition, p. 35)

■ Not only has plaintiff failed to implicate the vessel or its crew in the events leading up to his injury, but his own version of how the accident happened points inescapably to the conclusion that it was caused solely by the negligence of his fellow longshoremen. It was they who failed to de-

tach the spreader bars from the lifting gear, choosing instead to place the bars loosely on top of the plywood draft. This decision to "take the easy way" rather than the safe way was made "without any participation or knowledge by the shipowner." *Forkin v. Furness Withy & Co.,* 323 F.2d 638, 640 (2d Cir. 1963). Moreover, it is clear from plaintiff's deposition that the plywood draft was lifted with unusual and careless speed, causing the spreader bars to fall from the draft and swing back under the forks of plaintiff's chisel:

> "Q Well, can you tell us whether the [cargo] ring went up at the time of your accident faster than usual or not?
>
> "A Well, as a rule they don't never lift nothing as far as they lift that because, as a rule, when you pick up anything out of the doorway they always tighten the fall up and then they raise it to see whether it is clear, but they just went right on, went right on and caught—when they went up they went up so fast the bars swung back and when it did it swung up under the blade of the chisel."

(Plaintiff's deposition, pp. 28–29).

In short, this case presents classic operational negligence by fellow longshoremen, for which the vessel would not have been liable even under the expansive, pre-1972 doctrine of unseaworthiness and even if the stevedore negligence had occurred on board rather than on a pier outside the control of the vessel.[3] *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). Liability of the vessel for *negligence* under such circumstances is insupportable. See *Forkin v. Furness Withy & Co., supra.*

◾ Plaintiff suggests that the pier was in an unsafe condition on the date of the injury in that it had no caplog[4] rim and that absence of a caplog was a substantial factor in bringing about his injury. He claims, on pp. 66–67 of his deposition, that had there been a caplog the forklift truck could not have been pulled off the edge of the pier. Assuming for the moment that the pier was unsafe for lack of a caplog and that this condition was a proximate cause of plaintiff's injury, that could not form the basis for imposition of negligence liability on the vessel. There is no genuine dispute over the defendant's lack of control over the pier and, as a matter of law, the shipowner has no duty to repair pier defects or issue warnings on the subject to longshoremen working there. *Mascuilli v. American Export Isbrandtsen Lines, Inc.,* 381 F.Supp. 770, 779 (E.D.Pa.1974) (Becker, J.), affd. without opinion, 511 F.2d 1392, 1394 (3d Cir. 1975). This is true as a matter of Pennsylvania law as well. *Mascuilli, supra; Watson v. D/S A/S Idaho,* 359 F.Supp. 496 (E.D.Pa.1973).

◾ In his deposition plaintiff also alludes to the fact that the forklift truck which he drove on the morning of the accident—and which was furnished to him by the stevedore—had defective brakes. Even if that was a proximate cause of plaintiff's injury, the vessel cannot be liable therefor as a matter of maritime law, or under the law of Pennsylvania. *Victory Carriers v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); *Watson v. D/S A/S Idaho, supra.* See also H.R.Rep. No. 92–1441, 3 U.S. Code Cong. & Admin.News, p. 4703 (1972).

◾ Finally, plaintiff contends that the ship "caused" the injury because members of the crew, before stevedoring operations

---

3. The pier was owned by Independent Terminals Co. (defendant in Civil Action 74–1820) and leased by it to plaintiff's stevedore employer, Independent Pier Co. The defendant shipowner did not own, manage, operate, control, or supervise the pier in any way, as plaintiff admits.

4. A caplog, according to plaintiff's testimony, is a piece of wood, approximately 10 to 12 inches in height and width, which is used to edge the apron of a pier. Plaintiff's deposition, p. 66. The pier on which the accident occurred had no caplog; plaintiff had worked on the pier on previous occasions and testified that to his knowledge it had never had a caplog.

began, shackled a cargo hook to the lifting gear at hatch # 1. This assertion is made in an unsworn "Additional Factual Statement" contained in a memorandum of law opposing the defendant's motion for summary judgment. As a matter of Rule 56 practice, nothing in that statement can properly be considered by the court in deciding the motion. 6 Moore's Federal Practice ¶ 56.11[1.–8]. Even if it were in proper form, however, plaintiff's cargo hook theory would fail to raise any genuine issue of material fact. Essentially, plaintiff argues that to remove the spreader bars from the cargo hook (as opposed to a pelican hook or what plaintiff terms a "safety hook") would have caused a delay in cargo loading operations. From this he reasons that the cargo hook in use at hatch # 1 was "defective and unsafe" and concludes that plaintiff's injury was "caused by the vessel" through its gear, thus stating a maritime cause of action and eluding the rule of *Victory Carriers, Inc. v. Law, supra.*

This argument is absurd. Leaving aside issues of duty [5] and notice,[6] plaintiff's theory of vessel liability for negligence falls for lack of any showing of causation.[7] It is not enough to show that ship's gear was involved, in a factual sense, in a situation. The gear must *cause* the injury. *Pryor v. American President Lines,* 520 F.2d 974 (4th Cir. 1975), cert. denied, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644, 44 U.S.L.W. 3398 (1976).

From the foregoing it should be obvious that on the undisputed facts of this case defendant is entitled to summary judgment, under cases decided prior to the 1972 Amendments to the LHWCA. The intent and effect of those Amendments, clearly, was to narrow the potential liability of a vessel to longshoremen and harbor workers. *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974). A fortiori, summary judgment is appropriate under the new Act, and it would be superfluous for me now to address the question of precisely what standard of care the Amendments were intended to establish in third party negligence actions against a vessel. See: *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643, 44 U.S.L.W. 3398 (1976).

Plaintiff has made no effort to state a negligence claim under Pennsylvania law and seems tacitly to have agreed that no such claim exists. Accordingly, the motion for summary judgment will be granted and the Complaint in Civil Action 74–1819 will be dismissed.

---

**5.** See *Bess v. Agromar Line,* 518 F.2d 738 (4th Cir. 1975), discussing the duty of a vessel re choice of equipment, under the 1972 Amendments.

**6.** See *Miller v. A/B Svenska Amerika Linien,* 454 F.2d 1094 (3d Cir. 1971).

**7.** Even if choice of the cargo hook made it inconvenient to detach the spreader bars, that at the most would furnish an excuse for the longshoremen's decision. On that theory, no one would have been negligent. Furthermore, plaintiff's argument ignores the negligence of the longshoremen in raising the plywood draft too quickly. See pp. 1004–1005, supra.