(789 P.2d 1203)
No. 63,964

STATE OF KANSAS, *Appellee,* v. JOHN R. DALY, *Appellant.*

Opinion filed April 13, 1990.

John C. Humpage, of Topeka, for appellant.

Martin L. Miller, assistant district attorney, James E. Flory, district attorney, and Robert T. Stephan, attorney general, for appellee.

Before ABBOTT, C.J., REES and RULON, JJ.

RULON, J.: John R. Daly, defendant, appeals his bench conviction for possession of cocaine. K.S.A. 1989 Supp. 65-4127a.

### Factual History

On September 7, 1988, Robert VanHoesen, a Douglas County Sheriff's detective, received a telephone call from Detective Jim Gillespie of the Los Angeles, California, Police Department. Detective Gillespie informed Detective VanHoesen that he used a narcotics "sniffer" dog as part of a routine investigative procedure to examine packages being shipped from the Los Angeles airport by Federal Express. Detective Gillespie told Detective VanHoesen that the dog had identified a package being shipped to a Lawrence, Kansas, address. Detective Gillespie believed this package was suspicious because the seams of the box were covered with duct tape. He then directed the dog to the package, and the dog indicated that it contained narcotics.

On September 8, 1988, Detective VanHoesen telephoned the Federal Express office in Lenexa, Kansas and arranged for a controlled delivery of the package. At 8:30 a.m., Sergeant Crossfield picked up the package at the Lawrence office of Federal Express and was provided with a Federal Express truck, uniform, and clipboard. Sergeant Crossfield took the package, which was addressed to John Daly, 837 Michigan, Building 9, Apartment 3, Lawrence, Kansas, to the Judicial and Law Enforcement Center in Lawrence.

Detective VanHoesen submitted an affidavit in support of a search warrant of the package, and a district judge issued the warrant at 9:37 a.m. Detective VanHoesen and Sergeant Crossfield opened the box and found it contained newspapers and a clear plastic bag containing a white, powdery substance. Sergeant Crossfield removed a small sample of the powder, and conducted a cocaine field test. The results of the test indicated that the substance was cocaine. The bag and package were then resealed.

Detective Mack Pryor, of the Lawrence Police Department, dressed in a Federal Express uniform and driving a Federal Express truck, proceeded with the package to the address to which the package was sent. He arrived at 837 Michigan at 10:30 a.m. and went to Building 9. The package was addressed to Apartment 3 in Building 9, but since the apartments were designated with the letters A through D instead of numbers, Detective Pryor went to Apartment C and rang the doorbell. After waiting five to ten minutes at Apartment C without any response, a man came out of Apartment A and asked Pryor if he was looking for Apartment A. Detective Pryor explained he was looking for Apartment 3 but had found the apartments to be designated by letters rather than numbers. The man in Apartment A then asked Pryor who he was looking for and Pryor responded "John Daly." The man identified himself as John Daly, accepted the package from Detective Pryor, and signed the Federal Express receipt form. Detective Pryor asked Daly if he was expecting a package from California, and Daly answered "yes."

After he delivered the package, Detective Pryor returned to the Federal Express truck and radioed Detective VanHoesen at the Judicial and Law Enforcement Center and informed him the package had been delivered and the correct address was Apartment A not 3. At that time, Detective VanHoesen was waiting for information from Pryor to complete an affidavit for a search warrant to search for the delivered package in Apartment A. The warrant was issued at 10:45 a.m. and received by VanHoesen at 10:48 a.m. Detective VanHoesen then radioed Sergeant Crossfield, who was waiting in a car near the apartment, and informed him that the warrant had been signed. VanHoesen then proceeded to the apartment building with the search warrant.

Within a few minutes, but before Detective VanHoesen arrived with the warrant, Crossfield, Pryor, and two other officers proceeded to Apartment A, and Pryor knocked on the door. When Daly answered, Pryor identified himself as a police officer and handcuffed Daly. The officers entered the apartment and, after being informed another person was upstairs, that person was brought down to the front room by Crossfield. The officers then remained in the front room until Detective VanHoesen arrived with the search warrant, which Crossfield testified was at about

10:50 or 10:55 a.m. Pryor testified that approximately 10 to 15 minutes elapsed from the time of entry and VanHoesen's arrival.

While in the front room, the officers observed drug paraphernalia and marijuana residue sitting in plain view. Officer Pryor testified that the package he had delivered was sitting between the coffee table and couch and some of the newspapers had been taken out. The officers did not look in the box until Detective VanHoesen arrived.

When Detective VanHoesen arrived with the search warrant, he discovered the plastic bag was not in the box and asked Daly for consent to search the apartment, which Daly denied. VanHoesen returned to the Judicial and Law Enforcement Center to request a third search warrant while the other officers remained at the apartment. VanHoesen's affidavit for the third warrant stated that the plastic bag had been removed from the box and "moved to an unknown location in the apartment." The affidavit further stated that the officers had observed, in plain view, pipes believed to be used for smoking hashish and marijuana, green vegetation believed to be marijuana, and a set of scales. The search warrant was issued at 1:39 p.m. and authorized a search for cocaine, marijuana, narcotics, paraphernalia, the plastic bag containing cocaine, items establishing identity of the person(s) in control of the apartment, and records of narcotics purchases and sales.

The third search warrant was executed shortly after its issuance, and the plastic bag containing cocaine was located under a blanket on a divan in the front room. The officers also seized various drug paraphernalia.

Daly was initially charged with possession of cocaine with intent to sell (K.S.A. 1989 Supp. 65-4127a); possession of marijuana (K.S.A. 1989 Supp. 65-4127b[a][3]); possession of drug paraphernalia (K.S.A. 65-4152[a][2]); and failure to pay tax imposed upon marijuana and controlled substances (K.S.A. 79-5201 et seq.). Following the preliminary hearing, Count I of the complaint was amended to charge only possession of cocaine, and the charge for failure to pay the controlled substance tax was dismissed by the trial court.

Daly filed two motions to suppress; one alleged the package was illegally seized in Los Angeles, the other claimed the officers'

warrantless entry into Daly's apartment tainted the evidence seized under the third search warrant. Both motions were denied.

Following a bench trial, the trial court found Daly guilty of one count of possession of cocaine and not guilty of possession of marijuana and possession of drug paraphernalia. In ruling on the charges of possession of marijuana and drug paraphernalia, the trial court found the officers had illegally entered the apartment without a warrant and, thus, the marijuana and paraphernalia in plain view were unlawfully observed and excluded from evidence. The court explained that the affidavit for the third search warrant claimed these items were in plain view without stating that the officers viewed the items upon a warrantless entry. The court noted the affidavit did not mention the inevitable discovery rule but instead totally relied upon the illegal entry. Additionally, in finding the entry to be illegal, the court stated that there was conflicting testimony as to whether the search warrant was even signed by the judge prior to the officers' entry.

### Warrantless Entry

Daly asserts that the police officers' warrantless entry of his apartment, which the trial court found to be illegal, tainted the third search warrant and the cocaine found pursuant to that warrant. He maintains the third search warrant is totally invalid because the affidavit supporting the warrant described marijuana and paraphernalia observed in plain view upon the officers' unlawful entry. Daly argues that, because the affidavit for the third search warrant includes the fruits of an illegal entry, all evidence obtained in a search pursuant to that warrant must be suppressed.

The trial court found the officers' entry of Daly's apartment to be unlawful because it was done without waiting for the arrival of a warrant. The State has not appealed this finding so our discussion continues under the assumption the officers' warrantless entry was unlawful.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Bill of Rights protect against unreasonable searches and seizures of persons and property. The exclusionary rule prohibits introduction into evidence of both materials directly obtained from an illegal search or seizure and evidence derived from the unlawful search or seizure. *Nardone v. United States*, 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266 (1939).

The fruit of the poisonous tree doctrine extends the exclusionary rule to bar evidence indirectly obtained from an unlawful search. *State v. McBarron,* 224 Kan. 710, 714, 585 P.2d 1041 (1978). However, the fruit of the poisonous tree doctrine is inapplicable where the police learn of evidence from an independent source, or where the connection between the unlawful conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. *McBarron,* 224 Kan. at 714. Whether evidence is admissible under this doctrine is a fact question. *State v. Mzhickteno,* 8 Kan. App. 2d 389, 393, 658 P.2d 1052 (1983).

In *Segura v. United States,* 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984), the United States Supreme Court held that the police officers' illegal entry of a private residence did not require suppression of evidence subsequently discovered at those premises when executing a valid search warrant obtained on the basis of information wholly unconnected with the initial entry. Further, in *Murray v. United States,* 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988), the Supreme Court held that the Fourth Amendment does not require suppression of evidence initially discovered during the police officers' illegal entry of private premises if that evidence is also discovered during a later search pursuant to a valid warrant that is wholly independent of the initial illegal entry.

Here, we are convinced the existence of an independent source precludes the application of the fruit of the poisonous tree doctrine to exclude the cocaine. The police officers knew, as a result of executing the first search warrant, that the box delivered to Daly contained cocaine. This knowledge was gained prior to the officers' illegal entry and from a source wholly independent from such entry. While the affidavit for the third search warrant included information concerning marijuana and drug paraphernalia in plain view upon the illegal entry, the information concerning the cocaine was gained from the officers' execution of the two prior valid search warrants. Any taint caused by the illegal entry was dissipated by the independent and separate sources upon which the officers' knowledge of the cocaine was based. Therefore, there is substantial competent evidence to support the trial court's refusal to suppress the plastic bag containing cocaine as fruit of

the poisonous tree. See *State v. Mzhickteno,* 8 Kan. App. 2d at 393.

### Probable Cause for Third Search Warrant

Daly contends the affidavit for the third search warrant did not satisfy the requirements of probable cause. He maintains that the statement "the white powder believed to be Cocaine, had been removed and moved to an unknown location in the apartment," was based on pure conjecture. Daly claims VanHoesen inferred the cocaine was still in the apartment and that inference does not constitute probable cause.

"If a trial court's findings on a motion to suppress evidence are supported by substantial evidence they will not be disturbed on appeal." *State v. Lockett,* 232 Kan. 317, 319, 654 P.2d 433 (1982).

A search warrant may not issue except upon a showing of probable cause. *State v. Dunn,* 233 Kan. 411, 414, 662 P.2d 1286 (1983). Sufficient factual information must be placed before the issuing magistrate to support an independent determination that probable cause exists. *State v. Abu-Isba,* 235 Kan. 851, 853, 685 P.2d 856 (1984). Probable cause refers to the quantum of evidence which would lead a prudent person to believe an offense has been committed. *State v. Brown,* 245 Kan. 604, 613, 783 P.2d 1278 (1989). It does not require the same type of specific evidence of an offense as would be needed to support a conviction. *State v. Dunn,* 233 Kan. at 415. Further, mere affirmations of belief or suspicions are not enough to provide a rational basis upon which a probable cause determination can be made. *State v. Dunn,* 233 Kan. at 414. Finally, the burden is on the prosecution to show a search and seizure was supported by probable cause. K.S.A. 22-3216(2).

Upon review of the record, we believe the trial court's finding of probable cause and refusal to suppress evidence is supported by substantial competent evidence. As noted by the trial court, there is a certain amount of inference or conjecture in the affiant's statement that the cocaine was in the apartment. However, the facts strongly support such a conclusion. The officers knew the package contained cocaine, the package was delivered to and accepted by Daly, and only a short period of time (approximately 15 minutes) elapsed between the delivery of the package and the

execution of the second search warrant. While a possibility exists that Daly could have somehow destroyed the cocaine during the brief period he had the box in his apartment before the second search warrant was executed, the mere possibility of destruction does not negate the logical inference that the cocaine remained in the apartment after it was removed from the box. Under these circumstances, there was probable cause to issue the third search warrant for the purposes of searching the apartment for a plastic bag containing cocaine.

### Illegal Seizure

Daly asserts that the package was illegally seized when Detective Gillespie selected the package based solely on the presence of duct tape and submitted it to a narcotics detection dog. He also complains the package was delivered to the Lawrence police without a warrant.

Letters and other sealed packages are in the general class of effects in which the public has a legitimate expectation of privacy. *United States v. Jacobsen*, 466 U.S. 109, 114, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). A search occurs when a reasonable expectation of privacy is infringed upon, while a seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property. 466 U.S. at 113.

In *United States v. Place*, 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983), the United States Supreme Court held that subjecting luggage to a sniff test by a trained narcotics detection dog is not a search within the meaning of the Fourth Amendment. In *Place*, Drug Enforcement Administration agents, suspecting the defendant of drug smuggling, approached the defendant at La Guardia Airport and requested permission to search the defendant's luggage, which the defendant refused. The agents seized the luggage and, approximately 90 minutes later, a narcotics detection dog reacted positively to one of two bags. 462 U.S. at 698-99. While the Court ruled that the Fourth Amendment did not prohibit such a detention, the Court held the police conduct exceeded the permissible limits of an investigative detention. 462 U.S. at 709-10. The Court found the 90-minute detention was a seizure requiring probable cause, which was absent. 462 U.S. at 709. The Court observed that detaining luggage from the immediate possession of a suspect intruded on the

suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his travel itinerary. 462 U.S. at 708.

In *Place,* the Supreme Court extended the scope of a *Terry* stop *(Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 [1968],) to include luggage. The Court held that when an officer possesses a reasonable suspicion that a traveler is carrying luggage containing narcotics, the officer may briefly detain the luggage to investigate the circumstances. 462 U.S. at 706. As in a traditional *Terry* stop, a court must weigh the intrusiveness of a limited seizure on an individual's Fourth Amendment rights against the governmental interests in such an intrusion to determine if a seizure based on less than probable cause can be supported. 462 U.S. at 703-05.

In holding that a canine sniff of a suitcase was not a Fourth Amendment search, the Court explained:

"A 'canine sniff' by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

"In these respects, the canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine— did not constitute a 'search' within the meaning of the Fourth Amendment." 462 U.S. at 707.

"*Place* teaches that a seizure of luggage *qua* seizure, with no deleterious effects on the air traveler, is simply not a Fourth Amendment issue." *United States v. Puglisi,* 723 F.2d 779, 787 (11th Cir. 1984). Therefore, when luggage is removed from a baggage cart for an immediate on-the-spot canine sniff, there is no impairment of the owner's privacy interests or possessory in-

terests. 723 F.2d at 787-88. Privacy interests are not affected because the sniff is not a search and possessory interests are not impaired because the owner has surrendered control of the luggage to a third-party common carrier. 723 F.2d at 788. Thus, the Fourth Amendment is not implicated and *Place* has no significance. 3 LaFave, Search and Seizure § 9.6(e) n.148 (2d ed. 1987).

In *United States v. Germosen-Garcia,* 712 F. Supp. 862 (D. Kan. 1989), a narcotics detection dog sniffed the luggage of suspected drug couriers after the airline carrying it arrived at Wichita Mid-Continent Airport but before the airline transported the baggage to the baggage claim area. The District Court held that the use of a drug detection dog constituted neither a search nor a seizure. 712 F. Supp. at 866. The court found that under *Place,* there was no search and no privacy expectations were violated. 712 F. Supp. at 866. Further, there was no seizure under the Fourth Amendment because the luggage was in the possession of a third-party common carrier, there was no significant delay in processing the luggage, and there was no disruption of travel plans. 712 F. Supp. at 866-67. Thus, the District Court concluded that a reasonable suspicion is not needed to subject a bag to a canine sniff when (1) the luggage is not taken from the immediate possession of the traveler or from an area in which he has a legitimate privacy interest; and (2) the delay involved is brief and does not interfere with the traveler's plan. 712 F. Supp. at 871.

The courts' reasoning in *Puglisi* and *Germosen-Garcia* directly follows the principles set forth in *Place. Place* holds that a canine sniff is not a search under the Fourth Amendment. Further, it is well established the Fourth Amendment prohibition against unreasonable seizures protects an individual's possessory interests. *United States v. Jacobsen,* 466 U.S. at 113. Clearly, possessory interests are minimal when control of an item has been surrendered to a third-party common carrier. Moreover, when there is no significant delay in delivery of a package or infringement on travel interests, it is difficult to find any infringement on possessory interests, particularly an infringement that implicates the Fourth Amendment. Thus, reasonable suspicion is not a constitutional prerequisite to a canine sniff under these circum-

stances. See *United States v. Puglisi,* 723 F.2d at 787-88; *United States v. Germosen-Garcia,* 712 F. Supp. at 871.

Applying these principles to the present case, there was no illegal seizure of the package addressed to John Daly. The package had been surrendered to Federal Express at the time the sniff test was conducted by the Los Angeles Police Department. At this point John Daly's possessory interests in the package were minimal. Further, there was no indication that the package was delayed for a significant amount of time because of the canine sniff. Once the sniff was completed, the Lawrence police were alerted and the package continued in the normal course of delivery until it reached Lawrence. The Lawrence Police Department had possession of the package for approximately one hour before the first search warrant was issued and executed. Again, this detention was brief, minimally intrusive upon Daly's possessory interests, and was solely for the purpose of securing the package while obtaining a search warrant.

Under these circumstances, there was not a seizure of the package under the Fourth Amendment. Daly's possessory interests were affected minimally, if at all. The detentions by the Los Angeles and Lawrence officers did not last for unreasonable lengths of time and the package was delivered within the time deadline established by Federal Express. Daly's Fourth Amendment rights were not violated by the use of a narcotics detection dog and the officers' actions subsequent to executing the first search warrant.

Affirmed.