Dennis **BARNEY, et al., Plaintiffs,**

v.

**James H. GILLESPIE, Jr.,
et al., Defendants.**

No. 88–C–0007–S.

United States District Court,
D. Utah, C.D.

Feb. 11, 1993.

Loni F. DeLand, Gilbert Athay, Ronald Yengich, Salt Lake City, UT, for plaintiffs.

David L. Wilkinson, Stephen J. Sorenson, Leonard E. McGee, Atty. Gen. Office, Salt Lake City, UT, Merrill Hirsh, Washington, DC, Kathleen Barrett, Salt Lake City, UT, for defendants.

## ORDER

SAM, District Judge.

The above entitled matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). The magistrate judge made a report and recommendation ("R & R") that defendant Mark Whittaker's motion for summary judgment on plaintiffs' 42 U.S.C. § 1983 claim be granted. Regarding the liability of defendant Jay S. Averett on the § 1983 claim, the magistrate judge found genuine issues of material fact in dispute and recommended Averett's motion for summary judgment on this claim be denied.

In addition, the R & R found that plaintiffs have no claim for relief against defendants Whittaker and Averett under 42 U.S.C. § 1985(3). Plaintiffs' pendant state claims were also found deficient and the magistrate judge recommended defendants be granted summary judgment on the plaintiffs' state claims.

No objection has been taken to the R & R. The court has reviewed the file and hereby adopts the R & R of the magistrate judge. Therefore,

IT IS HEREBY ORDERED that the motion for summary judgment of Mark Whittaker is granted in total. The motion for summary judgment of Jay S. Averett is denied except he is granted summary judgment on plaintiffs' claim under 42 U.S.C. § 1985 and pendent state claims.

SO ORDERED.

## REPORT AND RECOMMENDATION

BOYCE, United States Magistrate Judge.

Plaintiffs, Dennis Barney and Kim Hammonds, filed suit under 42 U.S.C. § 1983 against various Utah State and federal officials. The action was originally brought as a class action but was not certified for class relief and a motion for class certification was denied (File Entry 51). The individual plaintiffs alleged that plaintiff Barney was transporting $4,000 cash belonging to plaintiff Hammonds from Salt Lake City to Denver, Colorado on October 31, 1987. The money was allegedly being transported for the purpose of buying a motorcycle for Hammond while Barney was in Denver. The motorcycle was not purchased and Barney returned to Salt Lake City, Utah on November 1, 1987 with the $4,000. The plaintiff Barney was approached by DEA agents at the Denver International Airport before returning to Salt Lake City. Barney consented to a search of his luggage and the $4,000 cash was found but returned to him. It is alleged in the complaint that when Barney arrived at the Salt Lake City Airport, Barney was confronted by defendants Jay S. Averett and Mark Whittaker, Utah State Bureau of narcotics officers. Eventually the officers seized the $4,000 that Barney was transporting. The money was kept for forfeiture action which has been commenced by the Drug Enforcement Administration. Plaintiffs seek damages and injunctive relief in this action.

On May 25, 1989 some of the State and all federal defendants were dismissed from the suit on the basis of the adoption of a report and recommendation of the magistrate judge. The final order of dismissal was entered on October 10, 1989. The plaintiffs were allowed additional discovery during the time. Only the state defendants Mark Whittaker and Jay S. Averett remain as party defendants. On April 13, 1990 they made a renewed motion to dismiss or in the alternative for summary judgment. The plaintiffs requested additional time to file a response and an affidavit (File Entry 58) and a supplemental memorandum was filed in reference to the defendants Averett and Whittaker's motion for summary judgment. Material other than that presented in the complaint is before the court. Therefore, under Rule 12(b) and Rule 56, F.R.C.P. the matter is properly before the court for summary judgment. The plaintiffs were permitted additional periods for discovery and have responded to the motion for summary judgment. The plaintiffs have not objected to summary judgment under Rule 56(f) F.R.C.P. and have obviously had ample time to address the is-

sues.[1] Therefore, consideration of this dispute as a motion for summary judgment under Rule 56, F.R.C.P. is proper *Nichols v. United States*, 796 F.2d 361 (10th Cir. 1986); *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.1987).

The case has been referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to the reference on the defendant Mark Whittaker and Jay S. Averett's motion for summary judgment.

### Standard for Summary Judgment

■ Defendants are entitled to summary judgment if taking the affidavits and other submissions there is no material issue of fact between the parties and the defendants are entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Burnette v. Dresser Industries*, 849 F.2d 1277, 1284 (10th Cir. 1988). The non-moving party having the burden of proof at trial must come forward with evidence to show a material issue of disputed fact between the parties. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943 (10th Cir.1989); *Devery Implement Co. v. J.I. Case Company*, 944 F.2d 724 (10th Cir.1991). In order for the non-moving party to show a disputed issue of fact more than a mere scintilla of evidence must be presented. *Anderson v. Liberty Lobby*, supra. Plaintiffs must come forward with sufficient evidence to show an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992).

### Evidence

■ The plaintiffs' complaint is not verified and therefore plaintiffs may not rely on their pleadings to create an issue of fact where the defendants have submitted affidavits or other admissible evidence. *Nichols v. United States*, supra. The evidence which is relevant to the liability of the remaining defendants is the evidence that must be evaluated on the motion for summary judgment.

An affidavit of Jeff Wright, a Utah Bureau of Narcotics and Liquor Law Enforcement agent, states he was a field agent in 1987 (File Entry 20, attached). At approximately 3:00 p.m. on November 2, 1987 he reported to the Salt Lake City Airport to assist agent Jay Averett, a defendant and Utah State narcotics agent. Averett said to Wright that two individuals travelling under the name of McDonald had been stopped at the Denver Airport by narcotics agents and the McDonalds were carrying a large amount of cash. Delta airlines employees had previously given information to Averett about the McDonalds "and their nervous and suspicious appearance while purchasing airline tickets to Denver." At approximately 3:10 p.m. on November 2, 1987 Wright and agents Whittaker and Averett stationed themselves near the gate where the McDonalds were to deplane from their flight to Denver. At that time a white female was observed pacing nervously near the gate. The McDonalds deplaned and met the white female, later identified as Noele Trevithick. The three individuals from the airplane walked down the concourse, past the luggage carousel, and out the front door of the terminal. They appeared nervous and were looking around in all directions.

Wright previously had become acquainted with the individuals. He knew Barney as an individual associated with the local Sundowners motorcycle club. Wright had previously investigated Barney in regard to narcotics violations. He was familiar with one Knudsen (a/k/a Blue) and his ex-wife.

Agent Averett stopped the three individuals as they exited the airport terminal and advised that he was a police officer and asked if he could speak to them. The three agreed to speak to Averett. Averett asked to see their airline tickets. Two individuals produced airline tickets in the name of McDonald. Averett asked for identification

---

**1.** Extensions were granted to plaintiffs to respond to the defendants' motion for summary judgment (File Entries 42, 57) and for additional discovery (File Entries 45–50).

and plaintiff Barney produced identification in his own name. The other male produced identification showing he was Richard Knudsen.

Averett asked Barney and Knudsen if they were carrying any "narcotics, firearms or money." Barney and Knudsen denied carrying narcotics or firearms but stated they had $4,000 cash. Averett asked if he could see the money which was inside a brief case. Permission to look in the brief case was apparently given by Barney (¶ 12).[2] A large brown envelope was in the briefcase. The envelope was opened and it contained a large amount of cash. Also observed was an Uzi automatic weapons handbook, a receipt for a .45 caliber automatic handgun and other handgun manuals including one for a Walther 9mm. When Barney was questioned about the money he said he did not trust banks and always carried large amounts of cash. He said he was carrying the money for the purchase of a motorcycle and then he said the money was "just" in his possession. Knudsen did not claim any interest in the money. No mention at any time was made of Kim Hammonds.

The agents advised Barney, Knudsen and Trevethick they were not being detained or being charged. The agents said they would like to detain the money in order to have it examined by a drug detention dog. The three individuals said they did not want to talk with the officers. The individuals did not want to wait and said that they wanted a receipt for the money. The agents and other officers went to the airport unit office where the money was counted. Barney and Knudsen refused to speak further. They were given a receipt for the money and the three left. No drug courier profile was used in making the encounter with Barney and Knudsen. The decision for the encounter was based on the information supplied by Delta Airlines, the narcotics agents in Denver, and the plaintiff Barney and Knudsen's appearance and actions as the encounter in Salt Lake City.

Defendant Mark Whittaker submitted an affidavit (File Entry 20). He was an agent with the Utah State Bureau of Narcotics and Liquor Law Enforcement in November, 1987 and was assigned to the airport narcotics unit as a supervisor.

On November 2, 1992 he was advised by Agent Jay Averett that he had received information from a Delta Airlines ticket agent that a white male had purchased three airline tickets using a large amount of cash. The airline ticket agent said the two other persons were pacing back and forth and appeared to be nervous. The tickets were purchased in the names of George, Steve and Gary McDonald but the three did not appear to be related. None of the three had any checked baggage. The three had a briefcase and a camera. The three boarded the 8:35 p.m. Delta flight to Denver with return tickets for Salt Lake City of November 2, 1987. The ticket agent had previously provided reliable information to Agent Averett in the past.

Averett told Whittaker that Averett had contacted law enforcement officers at Denver's Stapleton Airport and given them the information from the Delta agent.

On November 2, 1987 Whittaker received information from Averett that came from "Denver Narcotics" that two males using the last name of McDonald were stopped at the Denver Airport. The individuals appeared nervous and suspicious. The persons were not carrying luggage and had $5,000 in cash. They boarded a flight for Salt Lake City.

Agents Jay Averett, Jeff Wright and Whittaker stationed themselves at the gate where the McDonalds would deplane from Denver. A white female was observed pacing near the gate. She met the two McDonald individuals when they deplaned. The female was Noele Trevithick. The three individuals walked down the concourse and appeared to be nervous, looking around in all directions. Whittaker and another officer waited to see if the third

---

**2.** Paragraph 12 of Wright's affidavit is not clearly written. However, it appears obvious the intent is to say Averett was given permission by Barney to look into the luggage item.

person who took the flight from Salt Lake City would deplane.

Whittaker was not present when Averett and Wright confronted Barney and Knudsen. Whittaker rejoined Averett and Wright and they went to the Airport Unit office where Whittaker counted the money that had apparently been obtained by Averett from Barney when Whittaker was not present. Plaintiff Barney and Knudsen didn't wish to talk, they were given a receipt for the money and left. After the three left, Whittaker set up a "problem" for a drug detection dog. Three packages were used. The dog alerted to the packages containing the money taken from Barney indicating it contained a residue of narcotics. The dog is a certified drug detection dog who with Averett, his handler, has been found to be accurate and competent in drug detection. The money was then turned over to the DEA. No profile was used in approaching the plaintiff Barney and his companions.

Jay Averett submitted an affidavit (Attach. File Entry 20). He was an agent with the Utah Bureau of Narcotics and Liquor Law Enforcement at the time. He was assigned to the airport narcotics unit. On October 31, 1987 Averett received information from a Delta Airlines ticket agent that a white male had purchased three airlines tickets with a large amount of cash. Two other males with the purchaser were seen walking back and forth and they all appeared nervous. The tickets were purchased in the names of George, Steve and Gary McDonald, but the individuals did not appear to be related. None of the three checked any baggage. They had a briefcase and a small camera. They boarded a Delta Airlines flight to Denver at 8:35 p.m. to return to Salt Lake City on November 2, 1987. The Delta ticket agent who provided the information had been reliable in the past.

Averett contacted law enforcement officers at Stapleton Airport in Denver and gave them the information about the McDonalds. On November 2, 1987, Averett received information from Denver narcotics that two males using the name of McDonald were stopped at the Denver airport. They were nervous and suspicious and were not carrying luggage. They had $5,000 cash and the two boarded a flight for Salt Lake City.

At 3:10 p.m. on November 2, 1987 agents Averett, Whittaker and Wright, stationed themselves near the gate where the McDonald individuals were to deplane. A white female was pacing nervously near the gate. The two McDonalds got off the plane and were met by the female, later identified as Noele Trevithick. The three individuals were carrying a briefcase and camera bag. They walked down the concourse and out the front terminal doors. They appeared to be nervous and looking around in various directions. Averett stopped the three individuals outside the terminal and identified himself as a police officer and asked if the individuals would speak to him. The three stated Averett could speak to them. Averett asked to see their airline tickets. The two males produced an airline ticket with last names of McDonald. One produced identification with the name Dennis Barney; the other provided identification in the name of Richard Knudsen. Averett asked about a third person travelling with them. They said there was such a person, but that he had stayed in Denver to "party."

Averett asked the two males if they had any narcotics, firearms or money and both denied having firearms or narcotics. They stated they had $4,000 in cash. Averett asked if he could see the cash and Barney stated it was inside the briefcase. Averett requested and received permission to open the brief case.

Inside the briefcase Averett found a large brown envelope and inside it was a large amount of cash. Barney was questioned about the large amount of cash. He stated he didn't trust banks and always carried large amounts of cash. Barney said he was carrying the money for the purchase of a motorcycle and the money was "just" in his possession. Knudsen didn't claim the money and no one mentioned Kim Hammonds or said he was the owner of the cash.

Barney was advised by Averett that he would like to obtain the money to have a drug detection dog examine it. Barney, Knudsen and Trevethick were advised that they were not being detained or charged with an offense. They were also told that they could come with the officers to the office for the dog's examination of the money or take a receipt and leave. Barney and the others said they did not want to talk with the officers or wait and they wanted a receipt for the money. The agents and suspect individuals went to the airport office, a receipt was given and then the three suspects left.

At that point, agent Whittaker set up the problem for the drug detection dog which alerted to a package containing the money.[3] The money was turned over to the DEA. No profile was used in making the stop of Barney and Knudsen.

Barney and Kim Hammonds have filed an administrative claim for the money which is the subject of a separate civil forfeiture action.

 The plaintiffs have filed a memorandum in opposition to the motions of Whittaker and Averett for summary judgment (File Entry 25). Factual statements in the memorandum are not evidence that can be considered on the motions for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946 (9th Cir.1978); *Givens v. Prudential–Grace Lines, Inc.,* 413 F.Supp. 1002 (E.D.Pa.1976); *Miller v. Peeples,* 456 F.Supp. 38 (N.D.Miss.1978). Although, D.Utah Rule 202(b)(4) allows material facts set forth in a movant's memorandum to be deemed admitted if not controverted, that rule does not apply to statements of fact in the opposing party's memorandum. The plaintiffs have, however, provided an affidavit of Richard Knudsen (File Entry 26) and a later affidavit of plaintiffs' counsel, Loni DeLand (File Entry 58). In plaintiffs' supplemental memorandum in response to the motion for summary judgment, some excerpts of deposition testimony are included. The depositions have not been provided or excerpts

attached to show the complete testimony on the issue.

The affidavit of Richard Knudsen states that he flew to Denver, Colorado with Dennis Barney and Allen Casey to attend a meeting of the Sundowner's Motorcycle Club. He returned on November 2, 1987 at 3:00 p.m. with Dennis Barney. Prior to the return flight, Knudsen and Barney were stopped at the Denver airport by DEA agents who searched them and found no drugs. Dennis Barney volunteered that he had $4,000 cash (unknown to Knudsen) in his briefcase. An agent in Denver looked in the briefcase and gave it back to Barney. Knudsen states that in Salt Lake City at the front doors of the terminal "we were stopped by a semi-circle of narcotics officers" who stated they were aware they were carrying $5,000 in cash and demanded to see it, "asked to search was all over again and generally made it clear we weren't allowed to leave until we did what they asked." Other than the request to search, the rest of the statement in ¶ 6 of Knudsen's affidavit is a conclusory and not properly a part of the factual requirement of an affidavit under Rule 56, F.R.C.P. *Vaughn v. Teledyne,* 628 F.2d 1214 (9th Cir.1980) (affidavit in opposition to summary judgment must not be mere conclusory allegation); *Luckett v. Bethlehem Steel Corp,* 618 F.2d 1373 (10th Cir.1980) (conclusory allegations insufficient for summary judgment); *Bruce v. Martin–Marietta Corp.,* 544 F.2d 442 (10th Cir.1976) (conclusory allegations do not establish an issue of fact for summary judgment); *Stevens v. Barnard,* 512 F.2d 876 (10th Cir.1975) (same). Knudsen states that he and Barney were searched all over their bodies and inside pockets and clothing, this was done over Knudsen's objection. An "agent" asked Dennis Barney why he was carrying the money and he said it was none of their business but then said it was not his and it belonged to someone who had given it to him to buy a motorcycle. Barney would not say who the person was who provided the money.

---

**3.** The dog was a certified drug detection dog. The dog's certificate was not attached to Aver-

ett's affidavit as was stated in the affidavit that it was.

An agent said he seized the money and Barney was upset. Barney was told he could have a receipt and they all went to the office. The agent searched Barney's brief case over both Barney and Knudsen's objections. An agent said a dog would sniff the money and it would be turned over to the IRS who would notify Barney. The agents left and locked the door. Knudsen said the agents did not allow he and Barney to remain for the dog sniff. Knudsen states he has no history or record of drug trafficking. In an argumentative and conclusory fashion (¶ 17) Knudsen denied he or Barney were nervous in the presence of the officers.

 Loni DeLand's affidavit recites that he (DeLand) had been advised by the former supervisor of Jay Averett of disciplinary actions against Averett within the Utah Department of Public Safety for nonappropriation of money. The affidavit is hearsay and inadmissible. Rule 801(c) F.R.E. *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1524 n. 9 (10th Cir.1992); 6 J. Moore & J. Wicker, *Moore's Federal Practice*, ¶ 56.22[1]. In addition, the substance of the affidavit may not be used for impeachment purposes. It appears at best to be a single discreditable act which could only be used to impeach under Rule 608(a), F.R.E. on cross-examination and not by the use of extrinsic evidence. Further, credibility of witnesses is not normally a matter to be resolved at summary judgment. *Butler v. Bensinger*, 377 F.Supp. 870 (N.D.Ill.1974); *United States ex rel. and for Use of Pneumatic & Elec. Equipment v. Continental Ins. Co.*, 44 F.R.D. 354 (E.D.Pa.1968). Mr. DeLand's affidavit will therefore, not be considered on the motions.

### Liability of Agent Mark Whittaker

 The only evidence as to defendant Mark Whittaker's participation in the circumstance of the seizure of plaintiff's money is that after the money had been seized by the defendant Averett, Whittaker joined agents Averett and Wright at the airport narcotics unit office.[4] A receipt for the money was given by one of the agents to the plaintiff Barney and he and the others left. Whittaker then set up a three package problem for the sniffer dog to work on. The dog alerted positively to the package in which the money was situated. Whittaker then obtained a commitment from a DEA officer to accept the money for forfeiture action. The money was seized by defendant Averett, Whittaker did not participate in the seizure. The information Whittaker had was of a suspected drug trafficker who was carrying a large sum of money. The only thing Whittaker did is subject the money to a dog sniff after it had been seized. A dog sniff by a trained sniffer dog is not a search. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Morales–Zamora*, 914 F.2d 200, 203–04 (10th Cir.1990); *United States v. Barbee*, 968 F.2d 1026 (10th Cir.1992); *United States v. Stone*, 866 F.2d 359 (10th Cir. 1989); *United States v. Walsh*, 791 F.2d 811, 815 (10th Cir.1986); *United States v. Williams*, 726 F.2d 661, 663 (10th Cir.1984); *United States v. McCranie*, 703 F.2d 1213, 1218 (10th Cir.1983); *United States v. MacDonald*, 670 F.2d 910, 913 (10th Cir.1982); *United States v. Venema*, 563 F.2d 1003, 1005–06 (10th Cir.1977). This is not altered by the fact that the plaintiff or others were not allowed to view the dog's sniff. See *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (prisoners have no right to be present during cell search). There is no evidence that Whittaker knew of any illegal seizure of the plaintiffs' money by Averett. It is reasonable to assume that Whittaker knew only the facts given him by Averett which could not be expected to vary from his and Wright's affidavits. There was no "unreasonable" action by Whittaker in merely subjecting the already seized package to a canine sniff.[5]

---

4. The evidence as to Whittaker's participation is contrary to the allegations in plaintiffs' complaint.

5. This is not a situation where the prior illegality taints Whittaker's actions for civil rights purposes under 42 U.S.C. § 1983. This is a civil rights claim not one involving the fruit of the poisonous free concept associated with the ex-

The second action of Whittaker was that after the dog alerted to the package, Whittaker essentially presented the money to the DEA for forfeiture under 21 U.S.C. § 881. The alert of the trained and certified narcotics sniffer dog provided probable cause to believe the money contained drug residue and was therefore associated with drugs in some significant way. *United States v. Lux*, 905 F.2d 1379, 1381 (10th Cir.1990); *United States v. Bell*, 892 F.2d 959, 968 (10th Cir.1989); *United States v. McCranie*, 703 F.2d 1213 (10th Cir.1983); *United States v. Morales–Zamora*, 914 F.2d 200 (10th Cir.1990); *United States v. Williams*, 726 F.2d 661, 663 (10th Cir.1984); *United States v. Stone*, 866 F.2d 359, 363 (10th Cir.1989). See also *United States v. Dunkley*, 911 F.2d 522 (11th Cir.1990); *United States v. Trayer*, 898 F.2d 805 (D.C.Cir.1990); *United States v. Dovali–Avila*, 895 F.2d 206 (5th Cir.1990). The passing of the property for forfeiture can be reasonable under 21 U.S.C. § 881(b)(4) which authorizes a seizure without process when the "Attorney General has probable cause to believe that the property is subject to civil forfeiture" for violation of the narcotics law. Subsection (a)(6) subjects to forfeiture money furnished or intended to be furnished in exchange for an illegal controlled substance as well as "proceeds traceable to such exchange" or "used to facilitate any violation" of the narcotics law. The DEA has been delegated the authority of the Attorney General under § 881. See *United States v. One 1987 Ford F–350 4 × 4 Pickup*, 739 F.Supp. 554 (D.Kan.1990). The facts in this case pertaining to Whittaker, objectively viewed could provide a reasonably well trained officer with probable cause to believe the money was used in conjunction with a narcotics activity. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). See discussion *United States v. Padilla*, 888 F.2d 642 (9th Cir.1989); *United States v. 144, 600.00*, 757 F.Supp. 1342 (D.M.D.Fla.1991). In *United States v. Hernandez–Escarsega*, 886 F.2d 1560 (9th Cir.1989) the court held a dog's alert was part of the calculus of probable cause to seize money. Under the circumstance Whittaker may validly claim qualified immunity under 42 U.S.C. § 1983.

The circumstances of this case involve two basis for qualified immunity. First, the law relative to a dog alert on money and whether that fact, with other corroborative evidence, will provide probable cause to conclude the money was subject to seizure and forfeitable under 21 U.S.C. § 881(a)(6) and (b)(4) was not "clearly settled". *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Cent. v. Losavio*, 847 F.2d 642 (10th Cir.1988); *Hidahl v. Gilpin County Department of Social Services*, 938 F.2d 1150 (10th Cir.1991); *Jantz v. Muci*, 976 F.2d 623 (10th Cir.1992). The "substantial correspondence between the conduct in question and prior law allegedly establishing that defendants' actions were clearly prohibited" is lacking under the circumstances of this case. *Hannula v. City of Lakewood*, 907 F.2d 129, 13031 (10th Cir.1990); *Jantz*, supra. In this case, the applicable law was not clearly settled in 1987 and it is even very doubtful that it is clearly established now. In *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3039, the Supreme Court observed: "The Court of Appeals refused to consider the argument that it was not clearly established that the circumstances with which Anderson was confronted did not constitute probable cause ..." This was ruled improper. See *Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir.1992).

Second, a dog's alert for drugs as noted before, is strong evidence of drug involvement. It is probable cause as to the presence of the drugs. Also, the information

---

clusionary rule. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The exclusionary rule is not itself part of the Fourth Amendment. *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**1546**

Whittaker had about Barney and others' activities was highly suspicious and corroborated the dog's alert of drug activity. This could afford a trained narcotics officer a belief that probable cause existed for seizure. In 1987 this would be especially the case. Although today the presence of drug residue on money may be less significant, see 6 BNA *Criminal Practice Manual,* 563, 565 (November 25, 1992) (claim that drug residue can be from innocent circumstances), it still must be remembered that it was a dog that was used for detection purposes not a sophisticated mechanical device that will respond to the most infitestimal amount of drug. See Id. There must be sufficient quantity of drug present to trigger the olfactory response of the dog which usually requires a direct and immediate association with drugs. Sniffer dogs will not alert on money per se. Only money with adequate amounts of drug present will trigger the animal's response. Under *Anderson v. Creighton,* supra, the standard for qualified immunity in an officer's assessment of probable cause was stated as "objective (albeit fact specific) question whether a reasonable officer could have believed [a] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." 483 U.S. at 641, 107 S.Ct. at 3040, Whittaker is entitled to summary judgment if it can be said as a matter of law that a reasonable officer would believe he could do what Whittaker did. Id. at 641, 107 S.Ct. at 3039.

Recently in *Hunter v. Bryant,* —- U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) the Supreme Court ruled the Ninth Circuit had used an incorrect standard for summary judgment based on a claim of qualified immunity. The Ninth Circuit had said the issue as to whether a reasonable officer could have believed he had probable cause for an arrest was an issue for the trier of fact. The Supreme Court said the issue was for the court to determine prior to trial. It was not proper to the look at whether another reasonable interpretation of what happened could be developed afterwards, but whether the defendants acted reasonably under settled law under the circumstances. The Supreme Court held the officers had acted reasonably and should have been granted immunity. The case supports summary judgment in this case.

■ Plaintiffs, to prevail at trial, would have to show the law was clearly established and that no reasonable officer would have acted as Whittaker did. *Jones v. City and County of Denver,* 854 F.2d 1206 (10th Cir.1988); *Rozek v. Topolnicki,* 865 F.2d 1154 (10th Cir.1989); *Martinez v. Winner,* 771 F.2d 424 (10th Cir.1985); *Hubbert v. City of Moore,* 923 F.2d 769 (10th Cir.1991). Plaintiff must at this stage at least present a factual issue on the question. None has been presented. Whittaker's evidence is essentially uncontroverted. A scintilla of evidence is insufficient to avoid summary judgment. *Anderson v. Liberty Lobby,* supra. Therefore, it must be concluded that defendant Mark Whittaker is entitled to qualified immunity as a matter of law and his motion for summary judgment should be granted.

*Liability of Agent Jay S. Averett*

■ In determining the motion for summary judgment of Agent Averett, it must be kept in mind that the facts must be viewed in a light most favorable to the plaintiffs. *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988); *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.1991). When so viewed, it is apparent there is a material issue of fact as to the legality of the seizure of plaintiffs' money by Averett and the alleged illegal search of plaintiff Barney by Averett.

Considering the affidavit of Richard Knudsen there is a dispute as to the conduct of Barney and Knudsen as to whether they evidenced nervousness during the encounter with Averett and Wright.

There also appears a factual dispute as to how the plaintiff and Knudsen were approached by Averett. The manner of the encounter; whether there was a consent to search or a refusal, and the scope of any search that was conducted are disputed. This also precludes any recognition of qual-

ified immunity at this time. Under such circumstances, the defendant Jay S. Averett's motion for summary judgment on plaintiffs' § 1983 claim is not proper, *Anderson v. Liberty Lobby*, supra, and the motion should be denied.

### *Claim Under 42 U.S.C. § 1985(3)*

■ The plaintiffs have no claim for relief against defendants Whittaker and Averett under 42 U.S.C. § 1985(3). In order for plaintiffs to prevail on such a claim plaintiffs must establish a material issue of fact as to whether the defendants acted with a racial or other class based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Silkwood v. Kerr–McGee*, 637 F.2d 743 (10th Cir.1980). The affidavits of Averett and Whittaker eliminate such a motive for their actions and no evidence to support such a claim has been put forward by plaintiffs. This claim for relief is without merit. Defendants Averett and Whittaker are entitled to summary judgment on plaintiffs' § 1985 claim.

### *State Pendent Claims*

■ The plaintiffs' complaint alleged state pendent jurisdiction as a basis for relief. A pendent state claim was asserted by plaintiffs. The defendants contend the Utah Governmental Immunity Act notice requirements for suit against a government employee were not met in this case. The plaintiffs have not addressed the issue in their memorandum except to say that the Utah Governmental Immunity Act notice requirement is not a bar to plaintiffs' federal claims. This is correct. See *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Edwards v. Hare*, 682 F.Supp. 1528 (D.Utah 1988). However, the state notice law can be a bar to the pendent or supplemental (See 28 U.S.C. § 1367) claims of plaintiffs. Since plaintiffs have not pursued this matter in the face of the defendants' memorandum in support of summary judgment, it is assumed that plaintiffs have abandoned their state claims.

Further, plaintiffs apparently did not give the required statutory notice under Utah Code Ann. § 63–30–11, 12 before filing this action and suit on a state claim is therefore barred. *Madsen v. Borthick*, 769 P.2d 245 (Utah 1988). Defendants should be granted summary judgment on the plaintiffs' state claims.

### *Conclusion*

The motion for summary judgment of Mark Whittaker should be granted in total. The motion for summary judgment of Jay S. Averett should be denied except he should be granted summary judgment on plaintiffs' claim under 42 U.S.C. § 1985 and pendent state claims.

Copies of the foregoing report and recommendation are being mailed to the parties. They are hereby notified of their right to file objections hereto within 10 days from the receipt hereof.

DATED this <u>18th</u> day of December, 1992.