Robert L. Peter, Legal Counsel for Barton County Community College 108 N. Main Street P.O. Box 176 Ellinwood, Kansas 67526
Dear Mr. Peter:
As legal counsel for Barton county community college, you request our opinion regarding whether personnel of the community college may conduct searches of student housing for alcohol, illegal drugs, or drug paraphernalia. You also ask whether the canine unit of the county sheriff's office may be utilized in conducting the searches. You indicate that the searches are to be conducted pursuant to policies of the community college for the purpose of enforcing those policies; the searches are not to be conducted for the purpose of obtaining evidence for criminal prosecution.
According to the information you have provided, Barton county community college offers on-campus student housing which is owned and operated by the community college. Prior to occupying on-campus student housing, a student must complete and enter into a community college living center reservation/contract. The reservation/contract includes the following provisions:
 "5. The possession, use, or sale of alcoholic beverages or illegal drugs in On-campus College Student Housing . . . is a violation of the Kansas law, and College policy if you are under 21 years of age. If you are 21 or over, it is a violation of College policy.
 "6. Possession, use, or sale of cereal malt beverages in On-campus College Student Housing . . . is a violation of College Board of Trustees policy. These violations will be dealt with by the Coordinator of Student Housing and/or Judicial Board.
. . . .
 "14. Room inspection may be held any time at the discretion of the Coordinator of Student Housing or Dean of Student Affairs or their designee.
. . . .
 "23. The Barton County Community College Handbook is a part of this contract. All rules and regulations must be adhered to."
The authority of governmental authorities to conduct searches is subject to the constraints of the fourth amendment to the United States constitution and section 15 of the bill of rights of the Kansas constitution. The scope of section 15 of the bill of rights
of the Kansas constitution is identical to that of thefourth amendment to the United States constitution. State v.LeFort, 248 Kan. 332, 334 (1991); State v. Tinsley,16 Kan. App. 2d 287, 289 (1991). See also State v. Schultz,252 Kan. 819, 824 (1993). The fourth amendment to the United States constitution and section 15 of the bill of rights of the Kansas constitution protect a subjective expectation of privacy only if society recognizes that expectation as reasonable or justifiable.Katz v. United States, 389 U.S. 347, 360-61,19 L.Ed.2d 576, 88 S.Ct. 507 (1967); Oliver v. United States,466 U.S. 170, 177, 80 L.Ed.2d 214, 104 S.Ct. 1735 (1984).
Whether a canine sniff of student housing may be conducted is dependent on whether the canine sniff constitutes a search. "In order to challenge a search on Fourth Amendment grounds, a defendant bears the burden of demonstrating that he or she has a legitimate expectation of privacy in the place searched." U.S. v.Juda, 46 F.3d 961, 968 (9th Cir. 1995), quoting United States v.Lingenfelter, 997 F.2d 632, 636 (9th Cir. 1993); U.S. v. Conway,854 F. Supp. 834, 837 (D.Kan. 1994). In United States v. Place,462 U.S. 696, 77 L.Ed.2d 110, 103 S.Ct. 2637 (1983), the United States Supreme Court reviewed the constitutionality of exposure of an individual's luggage to a trained narcotics detection dog. The court acknowledged that a person possesses a privacy interest in the contents of personal luggage. Id. at 707. The court then noted that a canine sniff does not require the opening of luggage and exposure of noncontraband items and that the sniff discloses only the presence or absence of narcotics, a contraband item. Id. The limited disclosure of a canine sniff ensured that the owner of the property was not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods. Id.
 "In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here — exposure of respondent's luggage, which was located in a public place, to a trained canine — did not constitute a `search' within the meaning of the Fourth Amendment." Place, 462 U.S. at 707.
Because the canine sniff of the luggage did not constitute a search, the protections afforded under the fourth amendment were inapplicable.
While the United States Supreme Court determined that a canine sniff of luggage located in a public place was not a search within the fourth amendment, the United States court of appeals for the second circuit determined that it was "quite another [proposition] to say that a sniff can never be a search." United States v.Thomas, 757 F.2d 1359, 1366 (1985), cert. denied, 474 U.S. 819,88 L.Ed.2d 54, 106 S.Ct. 66 (1985), 479 U.S. 818, 93 L.Ed.2d 34,107 S.Ct. 78 (1986). Recognizing the heightened privacy interest an individual has in his dwelling place, the court stated:
 "[A] practice that is not intrusive in a public airport may be intrusive when employed at a person's home. Although using a dog sniff for narcotics may be discriminating and unoffensive [sic] relative to other detection methods, and will disclose only the presence or absence of narcotics, [citation omitted], it remains a way of detecting the contents of a private, enclosed space. With a trained dog police may obtain information about what is inside a dwelling that they could not derive from the use of their own senses. . . . Here the defendant had a legitimate expectation that the contents of his closed apartment would remain private, that they could not be `sensed' from outside his door. Use of the trained dog impermissibly intruded on that legitimate expectation. . . . Because of defendant Wheelings' heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search. As the agent had no warrant, the search violated the Fourth Amendment." Thomas, 757 F.2d at 1366-67.
The second circuit's decision in Thomas has been criticized in three federal circuits. See Lingenfelter, 997 F.2d at 638 (canine sniff outside warehouse; "Thomas has been rightfully criticized. . . . Because Thomas rests on an incorrect statement of law, we expressly reject its reasoning"); U.S. v. Marlar,828 F. Supp. 415, 418 (N.D.Miss. 1993) (canine sniff of exterior motel room door; "Thomas has been criticized by other circuits and in other contexts [citations omitted] and, in fact, Thomas appears to stand alone for the proposition that a dog sniff can ever constitute a search"); United States v. Colyer, 878 F.2d 469, 475 (D.C. Cir. 1989) (canine sniff of train sleeping compartment from public corridor; "the very correctness of the Thomas decision is called into question by its assertion that the defendant `had a legitimate expectation that the contents of his closed apartment would remain private.' Id. As was shown above, the Supreme Court's analyses in Place and Jacobsen indicate that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed"). See also People v. Dunn,564 N.E.2d 1054, 1056-57 (N.Y. 1990) (canine sniff of common hallway outside apartment door; "[a]lthough the Second Circuit, in [Thomas], held Place inapplicable to `residential sniffs,' we find its attempt to distinguish that case unpersuasive. . . . Whether or not there exists a heightened expectation of privacy, the fact remains that a `canine sniff' reveals only evidence of criminality [citation omitted]. Since that was the factor that was determinative in Place, we conclude that its holding is controlling even where the target of the `canine sniff' is a residence").
The tenth circuit has consistently held that a canine sniff does not constitute a search and therefore does not need to be supported by probable cause. U.S. v. Garcia, 42 F.3d 604, 606
(10th Cir. 1994) (luggage in airport terminal); U.S. v. Ludwig,10 F.3d 1523, 1527 (10th Cir. 1993) (automobile in motel parking lot); U.S. v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990) (automobile at roadblock); U.S. v. Stone, 866 F.2d 359, 363 (10th Cir. 1989) (automobile); U.S. v. Burns, 624 F.2d 95, 101 (10th Cir. 1980) (locked briefcase in motel room); U.S. v. Venema,563 F.2d 1003, 1006-07 (10th Cir. 1977) (storage locker); Fillmore v.Ordonez, 829 F. Supp. 1544, 1559 (D.Kan. 1993) (briefcase); Barneyv. Gillespie, 813 F. Supp. 1537, 1544-45 (D.Utah 1993) (currency in luggage at airport terminal); U.S. v. $83,900.00 in U.S.Currency, 774 F. Supp. 1305, 1317 (D.Kan. 1991) (contents of stopped automobile); U.S. v. Germosen-Garcia, 712 F. Supp. 862, 867
(D.Kan. 1989) (luggage at airport terminal). The Kansas courts have reached similar conclusions. See State v. Barker,252 Kan. 949 (1993) (canine sniff of package); State v. Daly,14 Kan. App. 2d 310 (1990) (canine sniff of automobile). Further, the tenth circuit has, in determining that a warrantless use of thermal imagery upon a residence violates fourth amendment rights, distinguished canine sniffs.
 "The dog sniff held constitutional in United States v. Place, 462 U.S. 696 (1983), offers a more precise comparison. The dog sniff, like the thermal imager, extracts information about the interior of an object solely from an analysis of external physical phenomena. The dog sniff, however, detects only the presence of narcotics that an individual cannot lawfully possess; the dog sniff therefore cannot reveal information about conduct or activity that an individual has a right to pursue. See 462 U.S. at 707. The thermal imager is far less discriminating in its ability to identify illegal activity, and it empowers the government to detect a vast array of innocent conduct. The court, in holding a dog sniff to be a non-search within the meaning of the Fourth Amendment, emphasized that the unique qualities of the dog sniff rendered it `sui generis.' Id. As the imager lacks the precision of the dog sniff, we decline to extend Place to allow the warrantless use of thermal imagers upon a home. See Young, 867 P.2d at 603-04." U.S. v. Cusumano, 1995 WL 584973, *8-*9 (10th Cir. (Wyo.) Oct. 4, 1995).
See also U.S. v. Field, 855 F. Supp. 1518, 1519 (W.D.Wis. 1994).
Society does not recognize as reasonable or justifiable a subjective expectation of privacy in ambient air space. Therefore, a student does not possess a privacy interest in the air beyond the walls and doors of the student's living quarters in on-campus student housing. Personnel of a community college may without prior cause, see Garcia, 42 F.3d at 606; Ludwig,10 F.3d at 1527, conduct a canine sniff within the corridors of on-campus student housing. An alert by a dog used in a canine sniff provides probable cause for conducting a search of the student's living quarters. See Ludwig, 10 F.3d at 1527-28.
The fourth amendment to the United States constitution and section15 of the bill of rights of the Kansas constitution protect persons against "unreasonable searches and seizures." Jurisdictions which have considered the authority of college or university personnel to conduct warrantless searches of dormitory rooms have reached differing conclusions, State v. Hunter,831 P.2d 1033, 1035, fn. 3 (Utah App. 1992), cert. denied,843 P.2d 1042 (Utah 1992), with a determination of reasonableness being dependent on the circumstances surrounding the particular search.
The courts have held as reasonable warrantless searches of dormitory rooms in those instances in which there was minimal law enforcement involvement and the housing contract authorized searches by school personnel. Hunter, supra. (numerous incidents of vandalism, damage, and other problems led to room-to-room search for violations of school's alcohol and explosives policies; evidence of thefts discovered during search submitted to law enforcement for criminal prosecution); State v. Kappes,500 P.2d 121 (Ariz.Ct.App. 1976) (routine monthly search for inspection of cleanliness, safety, or need for repairs and maintenance; discovery of marijuana led to school disciplinary proceedings);People v. Haskins, 369 N.Y.S.2d 869 (1975) (unoccupied room in a dormitory suite searched following a rumor to school official from a confidential source; evidence of criminal possession submitted to law enforcement for criminal prosecution).
Searches were deemed unreasonable when the searches were not conducted for the purpose of furthering the educational functions of the institution or when the actions of the school personnel were instigated by law enforcement officials and included a strong presence of law enforcement officials. Morale v. Grigel,422 F. Supp. 988 (D.N.H. 1976) (presence or absence of stealing on a campus does not disrupt or disturb operation of educational functions; search must further interest separate and distinct from that served by state's criminal law; intensive, repeated, warrantless search of dormitory room in attempt to find stolen stereo is unreasonable; administrative checks for health hazards would be permissible); Smyth v. Lubbers, 398 F. Supp. 777
(W.D.Mich. 1975) (obedience to drug laws and regulations not so crucial to performance of educational function as to permit extraordinary means of enforcement; warrantless search of dormitory room by school officials who are accompanied by law enforcement for the purpose of gathering evidence of criminal activity is unreasonable); Piazzola v. Watkins, 442 F.2d 284 (5th Cir. 1971) (warrantless search of dormitory room conducted by two state narcotics officers and city police officers for purpose of obtaining evidence of criminal activity is unreasonable); Peoplev. Cohen, 292 N.Y.S.2d 706 (1968) (warrantless search by school officials who are accompanied by law enforcement and which is conducted for the purpose of discovering criminal activity is unreasonable). But see Moore v. Student Affairs Committee of TroyState University, 284 F. Supp. 725 (M.D.Ala. 1968) (information regarding drug possession received by law enforcement; two state narcotics officers accompanied school official during search; "reasonable cause" existed for search; evidence of possession of marijuana submitted to law enforcement for criminal prosecution).
In Attorney General Opinion No. 79-179, the issue of whether personnel of the university of Kansas may conduct warrantless searches of student dormitory rooms was addressed.
 "University of Kansas personnel may search any residence hall room if notice is given in accordance with the twenty-four hour notice requirement referenced in the residence hall contract. Emergency searches are permitted without such notice where there is `imminent danger' to life, health, safety or property. Unreasonable searches, not in compliance with these contractual provisions, may give rise to legal rights and remedies pursuant to the United States Constitution, federal civil rights law and Kansas tort laws, in addition to any legal recourse from breach of the residence hall contract." Attorney General Opinion No. 79-179.
While differences between a state university and a community college exist, these differences are insignificant when reviewing the authority of the educational institution to search on-campus student housing. Therefore, personnel of a community college may conduct a warrantless search of a student's living quarters in on-campus student housing only when the search is conducted for the purpose of furthering the educational functions of the community college, law enforcement involvement is minimal, and the housing contract authorizes searches by school personnel. While personnel of the community college may conduct a warrantless search of a student's living quarters in on-campus student housing following an alert by a drug sniffing canine, the search must further an interest separate and distinct from that served by the state's criminal law.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm